510 So.2d 449 (1987)
Mary B. VALLEY, Plaintiff-Appellee,
v.
The AMERICAN INSURANCE COMPANY, Defendant-Appellant.
No. 86-668.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1987.
Rehearing Denied August 12, 1987.
*450 James A. Bolen, Jr., of Bolen and Erwin, Ltd., Alexandria, for defendant-appellant.
Daniel E. Broussard of Broussard, Bolton, Alexandria, for plaintiff-appellee.
Before GUIDRY, STOKER and DOUCET, JJ.
DOUCET, Judge.
In this worker's compensation case defendant, American Insurance Company (American), appeals from a judgment awarding plaintiff, Mary B. Valley, supplemental earnings benefits, rehabilitation services, attorney's fees, and penalties.
Plaintiff was employed as a nurse's aide by Woodview Regional Hospital (Woodview) in Pineville when, on February 9, 1984, she allegedly injured her neck and back while attempting to turn a patient over in a hospital bed. She reported the incident to her superior but finished working her eight-hour shift. The next day she visited Dr. Poppen complaining of pain in her neck and back. She was given a muscle *451 relaxant and, she claims, was told not to work.
One week later, she was examined by Dr. Grover Bahm who stated that plaintiff complained of pain and stiffness in the lumbar and lower cervical areas of her back and neck as well as in her upper trapezius muscles. He found some limitation of flexion in her lumbar spine due to stiffness. He prescribed a pain relief medication in addition to the muscle relaxant she was already taking. Plaintiff also received a medcosonic[1] treatment at Dr. Bahm's office that day. Dr. Bahm examined plaintiff one week later and found that she was doing "much better." Following a third examination on March 2, 1984, he released her to return to work.
Within several days plaintiff returned to Woodview intending, she claims, to try and work even though she was still suffering from pain. She reported to Pat Pope, the personnel director of the hospital, who advised her that she would have to see Mrs. Wainwright, the nursing director, about her job. Plaintiff testified that Mrs. Wainwright informed her that her job as a nurse's aide was no longer available to her. There is no evidence that plaintiff was informed of this other than her testimony. Mrs. Wainwright no longer works for Woodview and was not called as a witness at trial. The record, however, contains two letters written by Ms. Pope to plaintiff informing her that her position would remain open until April 30, 1984 and requesting that plaintiff contact the hospital. The letters were dated March 12 and April 10. Ms. Pope knew nothing of what did or did not transpire between Mrs. Wainwright and plaintiff.
In any case plaintiff never returned to her employment with Woodview nor has she worked or sought employment since that time. American, Woodview's worker's compensation insurer, paid compensation benefits to plaintiff for the period from February 17, 1984 to March 4, 1984 and her medical bills were paid in full through the March 2nd visit to Dr. Bahm. Payments were only made to March 2nd and March 4th because of the receipt by American of Dr. Bahm's report stating that plaintiff had improved since her accident and was able to return to work as of March 5, 1984.
After Dr. Bahm released her, plaintiff did not seek any medical treatment until May 13, 1984 when she was admitted to Rapides General Hospital under the care of Dr. J.M. Meek. A report by Dr. Meek stated that upon examination, plaintiff's chief complaints were: "Urine per colostomy. Back and neck pain." The main problem was related to a colostomy performed on plaintiff in 1972 following radiation therapy for cancer of the cervix. The report stated that the plaintiff "will also be seen by orthopaedics for her back pain," however there is no evidence that she was examined by an orthopedist while in the hospital. She received treatment for her bladder-colostomy problems and later that same evening fell when she attempted to leave her bed to go to the restroom.
She complained of headaches following the fall and was examined by a neurologist, Dr. A.N. Naalbandian. His report relates a history given by the plaintiff of pain in her neck and lower back since the February 9, 1984 accident. His examination revealed that plaintiff was experiencing some pain in the right side of her neck and posterior cervical spine although he found no limitation in the range of motion. An X-ray and CT scan taken of her skull revealed nothing abnormal and she was discharged from the hospital.
On June 12, 1984, plaintiff returned to Dr. Bahm still complaining of neck and low back pain. He prescribed a pain medication and a muscle relaxant and plaintiff received another medcosonic treatment. She saw him again on June 14, 1984 and received a medcosonic treatment. His report of that examination stated that plaintiff was suffering from posterior cervical pain which he stated was probably a severe tension headache. He also found pus in her urine for which he prescribed an antibiotic. His records reflected that on June 22, *452 1984, plaintiff was still complaining of pain in the cervical region. Medication was continued and she was given another medcosonic treatment.
Dr. Bahm felt that if the plaintiff had in fact injured herself and continued to suffer from neck and back pain, the accident was a contributing factor to plaintiff's pain. He found no real objective symptoms however, to explain her complaints of pain. He admitted that a tension headache may have contributed to the pain in her cervical area but also stated that the headache itself may have been related to the accident in question. Based on the information in his records it was his opinion that plaintiff could have returned to her job as a nurse's aid.
Following receipt of compensation benefits paid to March 4th, counsel for plaintiff began demanding of American the reinstatement of benefits claiming that plaintiff continued to be disabled from working. The benefits were not reinstated. Counsel also submitted to American requests for payment of plaintiff's bills from Dr. Bahm for the June 1984 treatment. These were not paid. In an effort to determine whether or not plaintiff was disabled, the Office of Worker's Compensation arranged for an examination by Dr. L. Donovan Perdue, an orthopedist.
Dr. Perdue examined plaintiff on July 12, 1984. He stated that plaintiff complained of tenderness in her "lower thoracic to [sic] upper lumber region at the midline of the back." She also complained of pain at the base of her neck upon compression of the cervical spine. X-rays of her back were normal as were sciatic stretch tests. He found no indication of muscle spasm in her back. His diagnosis was chronic back and neck pain based upon plaintiff's history and subjective complaints of pain. He found no objective reasons for her complaints of pain and felt that she could return to work as a nurse's aide. However, because of plaintiff's history of cancer, he recommended a bone scan which American later authorized. Counsel for plaintiff claims he was never advised that the test had been authorized and whether or not that was the case, the bone scan was never performed.
Plaintiff apparently did not see another physician until November 15, 1984 when she was examined, at the request of her attorney, by Dr. Vanda Davidson, an orthopedist. At that time plaintiff was complaining of headaches and neck and back pain which was aggravated by prolonged walking or standing. She stated that there was numbness in her feet and that her legs were weak. X-rays revealed degenerative arthritic changes at the L-5, S-1 level of her lower back and "quite a bit" of osteoporosis for a person plaintiff's age, 50 at the time of the accident in question. Dr. Davidson found muscle spasms on the left side of plaintiff's neck and the range of motion in her neck was borderline normal. He admitted that anxiety may have caused these muscle spasms. Otherwise, his objective findings revealed nothing abnormal. He prescribed a muscle relaxant and released her. Dr. Davidson opined that if in fact plaintiff had suffered an accident and the pain in her neck and back continued at the time he examined her, he would assume that she experienced an aggravation of the arthritis in her lower back and "possibly some other injury to the neck that was undefined by plain X-rays at my examination."
Dr. Davidson's report was forwarded to American by counsel for plaintiff along with a request that benefits be reinstated and medical expenses paid. That report gave no opinion as to plaintiff's ability to return to work however. In response to an inquiry from American, Dr. Davidson wrote in a later report that plaintiff's complaints of pain were related to the accident in question and were not related to any previous back injuries. He further stated that plaintiff would probably be able to return to some sedentary type work which did not require lifting or pushing heavy objects about. At his deposition Dr. Davidson stated that based on plaintiff's history, i.e., subjective complaints of pain, she would be disabled from working as a nurse's aide but by his objective findings she would not be.
*453 In February 1985, plaintiff admitted herself to Huey P. Long Hospital in Pineville complaining of back and neck pain which she attributed to the February 9, 1984 accident. A physical examination performed at that time revealed nothing remarkable and she was prescribed medication and released.
Plaintiff was examined for a second time by Dr. Perdue on March 6, 1985. Dr. Perdue stated that plaintiff continued to complain of pain in her neck and upper back but she told him she was "no longer bothered by any low back discomfort." An examination and X-rays revealed nothing abnormal except that he was concerned there might possibly be a slight compression of the body of the sixth thoracic vertebra. Dr. Perdue's report following this second examination stated that plaintiff's complaints of pain may be just on a basis of a cervical strain and degenerative disc disease but that "she has long since had ample time to recover sufficiently to return to normal activity."
By deposition and oral testimony plaintiff admitted that she had injured her back and neck in 1977 while working as a nurse's aide at Pinecrest Hospital. She subsequently settled a related worker's compensation claim. Following her recovery approximately one year later, she returned to work as a nurse's aide and continued to work until her accident in February 1984. She freely admitted that during this time her back and neck caused her pain but stated that it was not enough to bother her or prevent her from working. She confirmed that she injured her back at Woodview in 1982 but stated that she did not miss any work and thereafter recovered. Plaintiff stated that she had been willing to try and return to her job at Woodview even though she was in pain but that Mrs. Wainwright informed her the job was no longer available to her.
Plaintiff maintained that since then she has not sought employment because she was never free from pain. The level of pain fluctuates but she stated that it was never completely gone. She admitted that she cooks and does some housework but stated that her husband helps her. When she tries to do any lifting or scrubbing at home the pain increases. She admitted that no doctor she had seen ever told her that she was disabled from working. At the time of trial, she was only taking over-the-counter medication for her pain. She claimed that the slip and fall while in Rapides Hospital for bladder problems did not affect her back in any way because she did not notice any difference in felt pain.
Based on this evidence the trial judge found that plaintiff was entitled to supplemental earnings benefits in the amount of $174.12 beginning March 5, 1984. He also ordered that plaintiff be provided an evaluation to determine if she would benefit from rehabilitation services. Penalties in the amount of 12% of each benefit installment after March 5, 1985 and attorney's fees in the amount of $1,000 were also awarded.[2] On appeal American claims that the trial court erred in finding that plaintiff was entitled to supplemental earnings benefits, rehabilitation services, attorney's fees, and penalties. It also claims that the court erred in not leaving the record open for the introduction of additional evidence.

SUPPLEMENTAL EARNINGS BENEFITS
Initially, we find that if plaintiff was disabled because she injured her back in the manner claimed, she is covered by the Louisiana Worker's Compensation Law, La. R.S. 23:1021 et seq. Under the facts as related by plaintiff and corroborated in part by other evidence, she clearly was performing services arising out of and incidental to her employment in the course of Woodview's business. La.R.S. 23:1035.
La.R.S. 23:1221(3) provides for supplemental earnings benefits and reads in part:
"(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of *454 injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10)."
To qualify for supplemental earnings benefits under La.R.S. 23:1221(3)(a) a plaintiff is required to prove by a preponderance of the evidence that a work related injury resulted in her inability to earn wages equal to 90% or more of her wages at the time of injury. Gaspard v. St. Paul Fire & Marine Insurance Co., 483 So.2d 1037 (La.App. 3rd Cir.1985).
The trial judge found that plaintiff established that solely as a consequence of substantial pain plaintiff could not perform the duties of a nurse's aide. In reaching this finding the trial judge noted statements by Dr. Davidson indicating that plaintiff could not return to work involving lifting or pushing heavy objects. He also relied heavily upon plaintiff's own testimony, finding her to be "a very credible person." Plaintiff testified that pain prevented her from performing the duties required of a nurse's aide or any other employment.
In arguing that plaintiff failed to meet her burden of proof American relies primarily on the lack of objective findings to support plaintiff's complaints of pain and statements of several medical doctors indicating that she could return to her job as a nurse's aide.
A trial court's factual findings concerning work related disability should not be disturbed on appeal unless the evidence does not furnish a reasonable basis for the findings or the findings are clearly wrong. Notto v. Morton-Norwich Products, Inc., 498 So.2d 1158 (La.App. 3rd Cir.1986). A finding by the trial court that pain prevents a claimant from working is a question of fact. Newell v. United States Fidelity & Guaranty Company, 368 So.2d 1158 (La.App. 3rd Cir.1979). Great weight is afforded a trial court's findings on the credibility of a claimant in a worker's compensation case. Dominick v. CNA Insurance Company, 497 So.2d 758 (La.App. 3rd Cir.1986), writ denied, 501 So.2d 231 (La. 1987).
A review of the evidence shows that the trial judge must have relied heavily upon the plaintiff's testimony concerning pain in making the ultimate finding that plaintiff was entitled to supplemental earnings benefits. We are acutely aware that felt pain is subjective by its nature and that a truly accurate and objective measure of it does not exist. In cases such as this one where evidence that the plaintiff suffers from pain is crucial to a finding of disability, the finding of the trial court as to the credibility of the plaintiff is all important. We find that the record fully supports the trial judge's evaluation of plaintiff's credibility.
The plaintiff was very candid in admitting that she had previously injured her back. She emphatically stated however that even though she suffered from some pain off and on since her 1977 injury it was not disabling. This is borne out by the uncontradicted evidence that she worked as a nurse's aide since recovering from that injury in 1978 until February 9, 1984. There is absolutely no indication in the record that plaintiff is a malingerer. When asked if she would work if she could, plaintiff replied, "Yes sir, I would. I worked all my life. I don't mind working."
Ms. Pope testified that before the accident in question plaintiff had passed an exam qualifying her to become a "patient care technician", a step higher than a nurse's aide. When asked what kind of employee plaintiff was, Ms. Pope replied, *455 "Excellent." It is true that plaintiff failed to list on her application for employment at Woodview the previous job at Pinecrest where she injured her back. With regard to a pre-employment physical examination for Woodview, plaintiff apparently failed to inform the physician of her previous medical problems. However, we find these two unexplained instances do not adversely affect plaintiff's overall credibility.
There was no evidence that plaintiff was qualified to perform any work other than that of a nurse's aide. Pain prevented her from extended periods of standing or walking and she claimed, from performing any employment. Plaintiff consistently complained of disabling pain since her accident at Woodview and viewing the evidence as a whole, we are unable to say that the trial court was clearly wrong in finding that plaintiff met her burden of proving by a preponderance that she was entitled to supplemental earnings benefits.
Once it is found that due to a work related injury plaintiff is unable to earn wages equal to 90% or more of wages at the time of the injury, it must be determined what amount of supplemental earnings benefits the employee is entitled to receive. In connection with La.R.S. 23:1221(3)(a) the amount of wages the "employee is able to earn in any month ..." must be determined. In the instant case, the employee was not engaged in any employment or self-employment and this amount was therefore to be determined according to La.R.S. 23:1221(3)(c)(i) and (ii) which read:
"(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.
(ii) For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee can not perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment." (emphasis added)
The trial judge found that the plaintiff established by clear and convincing evidence that, solely as a consequence of substantial pain, plaintiff could not perform employment tendered by Woodview, that of a nurse's aide. He also found that no other employment was proven available to plaintiff. The burden is on the employer to show that such work is available to the employee and there was no admissible evidence on this issue. Gaspard, supra. The record contains a job description listing the varied duties expected of a nurse's aide. The job requires turning and positioning patients and assisting them with other "mobility functions." Under safety precautions it lists "uses good body mechanics." Obviously this precaution is intended to minimize the chance of an aide straining or injuring herself as plaintiff did and underscores the reality that a nurse's aide performs heavy lifting, pushing, and pulling. For these and other reasons previously discussed, we find that there was sufficient evidence in the record to furnish a reasonable basis for the finding by the trial court that plaintiff met her burden of proof in establishing that solely as a consequence of substantial pain she was unable to perform the duties of a nurse's aide.
We find no error in the trial judge's determination that plaintiff was entitled to supplemental earnings benefits in the amount of $174.12 per week based upon *456 her being able to earn $0.00. This amount is not otherwise contested by American.

REHABILITATION SERVICES
La.R.S. 23:1226 provides for rehabilitation services when an employee suffers an injury covered under the Louisiana Worker's Compensation Law precluding her from earning wages equal to wages earned prior to the injury. The trial judge ordered that plaintiff be evaluated to determine what if any vocational rehabilitation services should be provided to her. American disputes the determination that plaintiff is or may be entitled to rehabilitation services. Having found no error in the finding by the trial court that plaintiff was unable to earn wages equal to 90% or more of the wages she was earning at the time of her injury, we find no merit to this assignment of error.

PENALTIES AND ATTORNEY'S FEES
The trial judge awarded plaintiff attorney's fees in the amount of $1,000.00 and penalties. On appeal American asserts that the trial court erred in making these awards.
Installment benefits pursuant to La.R.S. 23:1221(3) are due on the 14th day after the employer or insurer has knowledge of the compensable supplemental earnings benefits. La.R.S. 23:1201 C. If such benefits are not paid when due a penalty of 12% of the unpaid amount due shall be assessed against the employer or insurer and added to the unpaid amount due unless, (1) the nonpayment results from conditions over which the employer or insurer had no control; or (2) the employee's right to benefits has been reasonably controverted by the employer or his insurer. La.R.S. 23:1201 E.
Failure to pay a claim for benefits within 60 days after receipt of written notice and demand shall render the employer or his insurer liable for payment of all reasonable attorney's fees incurred in the prosecution and collection of such claim when the failure to pay is arbitrary, capricious, or without probable cause. An employer or insurer who discontinues payment of benefits is also liable for all reasonable attorney's fees similarly incurred if the discontinuance was arbitrary, capricious, or without probable cause. La.R.S. 23:1201.2.
The trial judge's determination that an award of penalties and attorney's fees is warranted is based on a finding of fact and his decision should not be disturbed unless it is clearly wrong. Savant v. Employers National Insurance Company, 502 So.2d 176 (La.App. 3rd Cir.1987).
The trial judge apparently reasoned that an award of penalties and attorney's fees was warranted because after receiving the report of Dr. Davidson in March 1985, American could not have reasonably controverted plaintiff's claim for benefits and that in refusing to reinstate them it acted in an arbitrary and capricious manner and without probable cause. The report stated that plaintiff's complaints of pain were related to the accident in question, and were not directly related to any previous back injury. It also stated that plaintiff could not return to work requiring lifting or pushing heavy objects about. This report was dated March 5, 1985 and was stamped received by American on March 11, 1985.
We note however, that on March 25, 1985, American received a second report from Dr. Perdue dated March 13, 1985. That report stated that plaintiff "has long since had ample time to recover sufficiently to return to normal activity as noted by my July, 1984 report." His July 1984 report stated that "she is fit to work from the standpoint of her work related injury." Neither report addresses plaintiff's ability to do lifting or pushing although the reports indicate that Dr. Perdue was aware that plaintiff was a nurse's aide.
We have on the one hand a diligent employee who claims she suffered an injury and who consistently complains of pain in her back and neck to six or seven doctors over a period of a little over one year. On the other hand, no real objective findings are made to substantiate the complaints of pain other than degenerative arthritis. The employee suffered a disabling back and neck injury seven years prior to the accident *457 in question from which however, she recovered sufficiently to perform her work related duties for six years until the accident in question. We also have some conflicting medical opinions regarding the employee's ability to return to work.
Considering the record evidence including all correspondence between counsel for plaintiff and the representative of American, as well as the medical reports, we find that American reasonably controverted plaintiff's claim for benefits after March 4, 1984. A finding that American reasonably controverted plaintiff's claim logically precludes a finding that it acted in an arbitrary or capricious manner or without probable cause. We feel the trial court's finding to the contrary was clearly wrong.

INTRODUCTION OF ADDITIONAL EVIDENCE
At the close of trial counsel for American requested that the record be left open to allow the introduction of the deposition, to be taken at a later time, of Dr. Richard Galloway, a vocational rehabilitation expert. Dr. Galloway was supposed to testify at trial but was unavailable. No reason was given for his unavailability.
Trial in this matter was held on February 19, 1986, continued from an earlier date. Counsel for plaintiff objected to opposing counsel's request to leave the record open correctly pointing out that two pretrial conferences had been held and in neither was Dr. Galloway mentioned as a witness. Neither was he named in pretrial memoranda filed by American which listed the other witnesses it planned to call. Counsel for plaintiff only received noticed on February 6, 1986, less than two weeks before trial, that Dr. Galloway would be called as a witness. That notice consisted of a copy of an amended answer to an interrogatory, a copy of which was also filed in the record that same day. We note that no subpoena was issued for Dr. Galloway. The trial judge denied counsel's request to leave the record open and admitted, only under a proffer, a report by Dr. Galloway dated February 17, 1987.
La.C.C.P. arts. 1631 and 1632 confer on a trial judge broad powers to control trial proceedings. The decision of whether or not to hold a case open for the production of additional evidence rests within the sound discretion of the trial judge and his decision will not be disturbed on appeal unless it was clearly wrong. Broussard v. Coleman, 479 So.2d 1016 (La.App. 3rd Cir. 1985) writ denied, 481 So.2d 1354 (La.1986); Cutright v. Wilson, 410 So.2d 1274 (La. App. 3rd Cir.1982).
La.C.C.P. art. 1450 limits the use of depositions and reads in pertinent part:
"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (a) that the witness is dead; or (b) that the witness is at a greater distance than one hundred miles from the place of trial or hearing, or is out of this state, unless it appears that the absence of the witness was procured by the party offering the deposition; or (c) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."
In Broussard, supra, the trial judge refused to allow the introduction in evidence of a deposition even though counsel claimed that the deposed witness was too ill to testify at trial. The judge noted that the witness' name was not listed on the pretrial order, she had not been subpoenaed, and no evidence was offered to substantiate counsel's assertion that the witness was too ill to testify. The trial court also refused to hold the case open for the witness to testify later. The trial court's rulings were later upheld by this court.
We find that counsel for defendant did not adequately establish a basis under *458 La.C.C.P. art. 1450(3) for the introduction of Dr. Galloway's deposition. No reason was given for the absence of the witness and he was not subpoenaed. Notice was given to plaintiff's counsel that Dr. Galloway was not going to be called as a witness only on the day of trial. In view of these facts combined with the announcement less than two weeks before trial of his intention to call the witness, we feel the trial judge would have acted well within his discretion in refusing to allow a previously taken deposition to be admitted in evidence even had it been available at trial. Clearly the trial judge did not abuse his discretion in refusing to hold the record open for the introduction of a deposition to be taken in the future. For these reasons we also find no error in the court's refusal to admit in evidence the report of Dr. Galloway.
For the reasons assigned we reverse the judgment of the trial court insofar as it awards plaintiff any attorney's fees or penalties. In all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] A medcosonic treatment consists of the application of ultrasound to, and muscle stimulation of, the affected area for relief of muscle spasm and pain.
[2] The trial judge awarded penalties from March 5, 1985 apparently because this was the date of Dr. Davidson's report, later received by American, which stated that plaintiff could not return to work requiring the lifting or pushing of heavy objects.