564 So.2d 832 (1990)
Baltazar R. ARRIAGA, Plaintiff-Appellant,
v.
RELIANCE INSURANCE COMPANY OF ILLINOIS, et al., Defendants-Appellees.
No. 89-83.
Court of Appeal of Louisiana, Third Circuit.
July 13, 1990.
*833 Marcantel, Marcantel & Wall, D. Keith Wall and David E. Marcantel, Jennings, for plaintiff-appellant.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, John F. Wilkes, III, Lafayette, for defendants-appellees.
Before STOKER, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
This is a worker's compensation case. Plaintiff, Baltazar R. Arriaga, filed this suit against defendants, South Louisiana Contractors, Inc., and its worker's compensation carrier, Reliance Insurance Company of Illinois, seeking worker's compensation benefits, medical expenses, penalties, attorney's fees, legal interest and costs. After a trial on the merits, the trial court found that plaintiff was not entitled to compensation benefits and granted judgment for defendants. The trial court also cast defendants with costs. From this judgment plaintiff appeals. Defendants have answered *834 plaintiff's appeal, urging that the trial court erred in casting them with court costs. We affirm in part, amend in part, reverse in part, and render.

FACTS
The parties stipulated at trial that plaintiff, a legal resident alien from Mexico, was involved in a work-related accident while in the course and scope of his employment on April 1, 1985. Plaintiff, who worked as a board road hand, injured his left knee which necessitated an operation on April 16, 1985. Defendants paid compensation benefits and medical bills through April 15, 1986, when benefits were discontinued. It was further stipulated that, as of the time of trial, plaintiff was no longer employable at a manual job equal to that required of a board road hand.
As a result of his injury, plaintiff was seen by several physicians. Dr. Thomas Bryan Ford, an orthopedic surgeon, saw plaintiff on April 2, 1985. He conducted an examination and aspirated 30 cc's of bloody fluid out of the left knee. Dr. Ford stated that the amount of fluid removed was a small to moderate effusion. Dr. Ford prescribed Motrin and recommended that plaintiff return within a few days to see his associate, Dr. David Drez Jr., a specialist in knee and shoulder problems.
Plaintiff saw Dr. Drez, on April 8, 1985. He complained of pain and swelling in his left knee. Dr. Drez operated on plaintiff's knee on April 16, 1985, and found tears of his lateral meniscus, medial meniscus and posterior cruciate ligament. He performed a patella tendon graft in order to reconstruct the ligament. At this time, Dr. Drez gave a preliminary estimate that plaintiff would have a 35% disability to his lower left extremity. Plaintiff saw Dr. Drez several times in the succeeding months. Two months following the operation the splint was removed and plaintiff was scheduled for physical therapy. Plaintiff was examined by Dr. Drez on September 11, 1985, at which time he exhibited satisfactory motion in his knee but had a marked degree of atrophy of his musculature. Plaintiff continued to show atrophy of his musculature during his October 14, 1985 examination, however, his motion and strength had improved significantly. On December 4, 1985, Dr. Drez sent defendants a report which stated that plaintiff could not perform work involving squatting, jumping, or running; that plaintiff had a 30% disability to his left leg; that plaintiff's prognosis was poor; and that plaintiff could not return to his former position. Plaintiff last saw Dr. Drez on January 13, 1986, complaining of his inability to stoop, squat, kneel or run. Plaintiff had five centimeters of atrophy to his musculture which indicated to Dr. Drez that plaintiff was either not performing his physical therapy exercises or not performing them properly. Dr. Drez felt that he could not do much else for plaintiff and suggested that he consider vocational rehabilitative training.
Dr. Michael E. Heard, an orthopedic surgeon, examined plaintiff at the request of Acadiana Claims on July 26, 1985. Based on his examination, Dr. Heard speculated that it would take plaintiff approximately nine months to regain most of the motion in his knee. Dr. Heard agreed with Dr. Drez that plaintiff's permanent impairment would be approximately 35% to the left lower extremity.
Defendants terminated plaintiff's benefits as of April 15, 1986. Plaintiff subsequently filed a claim with the Office of Worker's Compensation. In connection with plaintiff's claim, Dr. Drez wrote a letter dated June 3, 1986, to Mrs. Janet Fortune at the State Department of Labor stating that, in his opinion, plaintiff was disabled from returning to work. After an attempt at informal resolution of the matter failed, plaintiff filed suit against defendants. On July 22, 1986, Dr. Drez wrote to Ms. Brenda Johnson, North American Underwriters, stating that in his opinion, plaintiff would not be able to return to an occupation that required squatting, stooping, bending, climbing or lifting weights that were much heavier than approximately 25 lbs. Dr. Drez opined that plaintiff had a 30 percent permanent impairment to his involved left lower extremity. He also stated that plaintiff was not totally disabled *835 and could certainly do some type of sedentary work.
Plaintiff also visited his family physician Dr. Louis E. Shirley, Jr. on February 3rd and on March 2, 1988. He observed a marked atrophy of plaintiff's thigh and a laxness of the posterior cruciate ligament. Plaintiff also had limitation of motion. Dr. Shirley felt that plaintiff could not engage in activities which required prolonged standing or walking, walking on uneven ground, running, pushing or shoving heavy objects. He stated that his assessment of plaintiff's condition was consistent with Dr. Drez's. Dr. Shirley opined that plaintiff was totally and permanently disabled from any type of manual labor.

SUPPLEMENTAL EARNINGS BENEFITS
On appeal, plaintiff contends that the trial court erred in failing to find that he is entitled to supplemental earnings benefits in accordance with LSA-R.S. 23:1221(3)(a).
At the time of the accident, LSA-R.S. 23:1221(3), providing for supplemental earnings benefits, read in part:
"(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10)."
Paragraph 3(c)(i) of LSA-R.S. 23:1221 further provided that:
"Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region."
Thus, to qualify for supplemental earnings benefits under this statute, a plaintiff must prove by a preponderance of the evidence that as a result of a work related injury he can no longer earn wages equal to 90% or more of his wages at the time of injury. Clark v. Welex, 517 So.2d 1186 (La.App. 3d Cir.1987), writ denied, 521 So.2d 1170 (La. 1988).
First, we note that a trial court's factual findings concerning work related disability should not be disturbed on appeal unless the evidence does not furnish a reasonable basis for the findings or the findings are clearly wrong. Valley v. American Insurance Company, 510 So.2d 449 (La.App. 3d Cir.), writ denied, 514 So.2d 130 (La.1987).
The trial court found that although plaintiff did sustain a work-related injury that he was physically able to return to work. In its Minute Entry, the court stated:
"Although Mr. Arriaga did sustain a work related injury, this Court finds that the petitioner is physically able to return to work. The only evidence of an existing medical condition which prohibits Mr. Arriaga from working is the plaintiff's *836 own self serving testimony. This Court finds that Mr. Arriaga was not a credible witness. Any evidence of injury or disability was impeached by the surveillance videotape."
Clearly, the trial court gave great weight to a videotape introduced into evidence which shows plaintiff performing chores and engaging in other physical activities outside his house. Defendants had surveillance conducted of plaintiff on four separate occasions. As noted by our Supreme Court in Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65 (La.1983), this form of evidence must be approached very cautiously because it shows only intervals of the subject's activities, it does not show rest periods, and it does not reflect whether the subject is suffering pain during or after the activity. After carefully reviewing the videotape, we find that it demonstrates merely that plaintiff can perform some physical activity. We do not find that it proves that plaintiff can return to work involving manual labor. Thus, we conclude that the trial court placed an inappropriate amount of weight on the videotape.
We find that, although the evidence in this case does not indicate that plaintiff's disability prevents him from engaging in any self-employment or gainful occupation for wages, it does show that plaintiff has a significant disability and cannot earn wages of 90% or more of his wages at the time of injury. The medical testimony previously reviewed establishes that plaintiff has a partial disability rating of approximately 30% to his left lower extremity. The doctors' advice as to restrictions placed upon plaintiff due to his work-related injury means that he can no longer perform physical activities requiring heavy lifting. Thus, plaintiff has met his initial burden of proving entitlement to supplemental earnings benefits.
In the instant case, plaintiff was not engaged in any employment or self-employment since his accident; therefore, the amount of supplemental earnings benefits he is entitled to receive is determined according to LSA-R.S. 23:1221(3)(c)(i). If he contends that the employee could earn more, the burden is on the employer under Subparagraph (c)(i) to show that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region.
In Culotta v. Great Atlantic and Pacific Tea Company, 524 So.2d 259 (La.App. 5th Cir.), writ denied, 530 So.2d 88 (La. 1988), the Fifth Circuit examined the issue of supplemental earnings benefits in regard to the employer's burden of proof under Subparagraph (c)(i). It noted how four courts have addressed this issue.
"In Gaspard v. St. Paul Fire & Marine Ins. Co., 483 So.2d 1037 (La.App. 3 Cir. 1985), benefits were granted because no evidence was produced that employment was available in the area that plaintiff could perform without substantial pain, or what wages plaintiff would have earned from such employment. A similar result was reached in Valley v. American Ins. Co., 510 So.2d 449 (La. App. 3 Cir.1987). As stated in Captain v. Sonnier Timber Co., 503 So.2d 689 (La.App. 3 Cir.1987), the employer must show the employee is physically capable of performing employment which is offered or available. In a Fourth Circuit case Batiste v. Hopeman Bros., Inc., 508 So.2d 922 (La.App. 4 Cir.1987), the court held the employer does not have to prove a particular job is available, just that jobs are available which the employee can physically perform. However, there the court noted that the testimony by the rehabilitation expert showed jobs were available in the market that the employee, who was unemployed, could realistically secure."
Id. at 261. The court in Culotta concluded that the jobs proven to be available to an employee under LSA-R.S. 23:1221(3)(c)(i) must be realistically obtainable by the employee and must offer earnings which are more than mere speculation.
In the instant case, two vocational rehabilitation experts testified at trial. Plaintiff's expert, Glenn Hebert, evaluated the *837 plaintiff, taking into account his physical limitations, education and training and prior work experience. He administered a test to determine plaintiff's level of functioning in reading, spelling, and math. He found that plaintiff couldn't spell any words; that he could do simple math on his fingers, but not on paper; and that he could only read six or seven words. Mr. Hebert stated that plaintiff was basically a functional illiterate and that his limited English speaking ability would be a significant handicap in applying for jobs. He further stated that he did not think that plaintiff would be able to obtain any type of employment in the geographical area until there is an upturn in the labor market.
Defendants' vocational rehabilitation expert, Jay Kallenbach, testified that there were jobs available to plaintiff in the community that he was capable of performing. However, he did not test plaintiff to determine his ability to read, write or speak English. He never spoke personally with defendant and was unaware that he is illiterate. Under the facts of this case, we find that defendants did not tender any realistic employment to plaintiff, nor did defendants meet their burden of proving that other work was available to him.
Plaintiff is entitled to supplemental benefits equal to 74% of the difference between what he can now earn in any month and 90% of his average monthly wages at injury. LSA-R.S. 23:1221(3)(a). This compensation results in the amount of $667.26 monthly.[1]

REHABILITATION
LSA-R.S. 23:1226(A) provided, at the time of plaintiff's injury, in pertinent part:
"When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. The employer or insurer shall provide such injured employee with appropriate training and education for suitable gainful employment...."
We find that the plaintiff in this case is entitled to rehabilitation services to ensure his ability in the future to remain competitive in the labor market. He needs vocational education and appropriate training for secure, suitable employment.

PENALTIES AND ATTORNEY'S FEES
Plaintiff argues that the trial court erred in failing to award penalties and attorney's fees under LSA-R.S. 23:1201 and 23:1201.2. In order to avoid an award of penalties, the employer must demonstrate that non-payment resulted from conditions over which it or the insurer had no control, or that it, or the insurer, has reasonably controverted the right to benefits. LSA-R.S. 23:1201(E). The employee's right to such benefits will be deemed reasonably controverted if the employer or insurer had a reasonable basis for believing that medical expenses and compensation benefits were not due the employee. Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363 (La.App. 3d Cir.1985). We find that based on the medical evidence regarding the plaintiff's ability to return to work that defendants did not have a legitimate basis for terminating his compensation benefits on April 15, 1986. As of that date, the evidence in defendant insurer's possession did not indicate that plaintiff could return to full duty. Defendants offered no job to plaintiff which took into account his illiteracy and physical impairment or was within his capacities. Thus, we assess the defendants with the statutory penalties provided by LSA-R.S. 23:1201(E).
Turning to the issue of attorney's fees, we note that LSA-R.S. 23:1201.2 provides that worker's compensation claimants are entitled to reasonable attorney's fees *838 when an employer's compensation insurer arbitrarily, capriciously or without probable cause discontinues benefits. Considering the factual and medical information available to defendant insurer in this case, we find that its actions were arbitrary and capricious. We therefore award attorney's fees in the amount of $7,500.00.
Finally, plaintiff argues that the trial court erred in not setting expert witness fees for all experts who testified in person or by deposition and in not taxing those expert witness fees as court costs. Although the defendants were taxed with all costs of the proceedings the trial court did not make any specific ruling as to the setting and assessment of expert witness fees. Thus, the appropriate procedure is for plaintiff to file a rule to show cause in the trial court for specific assessment of these fees. See LSA-R.S. art. 13:3666; Taylor v. Dixie Dandy, 493 So.2d 654 (La. App. 2d Cir.1986).
Accordingly for the reasons stated, the judgment of the trial court is affirmed in part, amended in part, reversed in part, and recast to read as follows.
IT IS ORDERED, ADJUDGED AND DECREED, that there be judgment in favor of plaintiff, Baltazar R. Arriaga, and against defendants, South Louisiana Contractors, Inc. and Reliance Insurance Company of Illinois, for supplemental earnings benefits in the amount of $667.26 per month from April 15, 1986 forward. Such payment may not exceed a maximum of 520 weeks. LSA-R.S. 23:1221(3)(d) (as in effect at the date of plaintiff's injury). All supplemental earnings benefits payments past due on the date this judgment becomes final are to be paid in a lump sum, together with legal interest on all past due payments from due date of each installment until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that herein named defendants be assessed with statutory penalties and that defendant, Reliance Insurance Company of Illinois, be assessed with attorney's fees in the amount of $7,500.00 with legal interest on the above amounts from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the right to file such proceedings as are provided by law to fix expert witness fees of the expert witnesses who testified at the trial hereof be reserved to the parties herein.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the herein named defendants be cast in solido for all costs of these proceedings at both the trial and appellate court levels, including all expert witness fees.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that herein named defendants provide rehabilitation services to the plaintiff as required by LSA-R.S. 23:1226.
AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART, AND RENDERED.
STOKER, J., files written reasons concurring in part and dissenting in part.
STOKER, Judge, concurring in part and dissenting in part
I concur fully with the majority holding in this case with the exception of the amount of the attorney's fee awarded. Counsel for the plaintiff has served his client well inasmuch as he has persuaded us not only to reverse the trial court's rejection of his demands, but award penalties and attorney's fees. However, I am of the opinion that a reasonable fee to cover both the trial and appeal phases of the case would be in the neighborhood of $5500.
NOTES
[1] Plaintiff earned an average of $233.00 a week which when multiplied by four and three tenths amounts to $1001.90 a month. Seventy four percent of the difference between the amount plaintiff is now able to earn (zero) and 90% of his wages at the time of his injury equals $667.26.