370 So.2d 1295 (1979)
Buford SMITH, Plaintiff-Appellee-Appellant,
v.
STATE of Louisiana, DEPARTMENT OF HIGHWAYS, and Houston General Insurance Company, Defendants-Appellants-Appellees.
No. 6949.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1979.
Rehearing Denied June 6, 1979.
*1296 Gravel, Roy & Burnes, Christopher J. Roy, Alexandria, for plaintiff-appellee-appellant.
Gold, Little, Simon, Weems & Bruser, Edward E. Rundell, Alexandria, for defendants-appellants-appellees.
Before DOMENGEAUX, SWIFT and DOUCET, JJ.
SWIFT, Judge.
Both sides in this workmen's compensation suit have appealed from the judgment of the district court awarding benefits to the plaintiff for partial disability under LSA-R.S. 23:1221(3), as amended in 1975, with a 12% penalty and $3,000.00 for his attorney's fee.
The plaintiff, Buford Smith, was employed as a safety supervisor with the Department of Highways. As such, he was required to drive long distances all over the state at frequent intervals and also to stand and stoop for lengthy periods. In the latter part of 1974 the plaintiff stepped in a hole and sustained a compensable injury to his back. A bilateral laminectomy at L4-5 and L5-S1 was performed on June 4, 1975. Mr. Smith recovered to the extent that he was able to go back to work around August of that year, but with some pain or numbness of the lumbosacral area which extended down towards his left heel.
During the course of his employment on December 3, 1975, the plaintiff hurt his back again in an automobile accident. He returned to his same job some time thereafter, but complained of continued pain and suffering while driving, sitting, standing and stooping for long periods of time. The physicians who examined him in connection with an application for a disability pension confirmed that his complaints were valid and Smith was retired in February of 1977.
Some time in 1976 Mr. Smith was appointed to the board of directors of the Central Louisiana Bank and Trust Company for which he was paid $137.50 per month. In 1977 he was made a member of the bank's loan committee and paid an additional $100.00 a month. At the end of 1977 he received bonuses, which were apparently determined on the basis of the bank's profit for the year, that brought his total income *1297 from Cenla Bank for 1977 to $13,500.00. He is now a vice-president of the bank, with an office in Effie, Louisiana, to which he goes each day to supervise loans and provide other services. Mr. Smith testified he sets his own hours according to the way he feels and spends considerable time resting at his office. The record indicates he is at the bank most of the time on banking days.
The plaintiff settled his workmen's compensation claim that arose from the first accident. However, the trial judge concluded that he is presently disabled as a result of injuries sustained in the December 3, 1975, accident and certainly he was not manifestly in error in this respect.
The principal questions to be determined on this appeal are:
1) Whether the plaintiff is permanently and totally or only partially disabled; and if the latter
2) Whether the sums that the plaintiff has and will receive from the bank are to be considered as "wages" in computing the partial disability benefits to which he is entitled.
The plaintiff contends that he is in constant pain both at home and at the bank and spends most of the time resting. His wife testified to the same effect. However, her statement that the plaintiff was at home most of the time is not supported by him or by the record.
Both doctors who were called by Mr. Smith, Thomas Campanella and Herbert K. Plauche, said that he could do the work of a bank loan officer, provided he was not required to sit for any prolonged conferences and could get up and move around as he pleased. The plaintiff testified that he was able to do just this while at the bank. Also, Dr. Douglas Gamburg, who examined Smith at the request of defendants, expressed the opinion that the plaintiff could perform the duties of a loan officer at a bank as his pain was not constant. William Ed Candler, an investigator for the defendants, who spent a good part of a day with the plaintiff posing as a potential customer of the bank, testified that although the plaintiff walked slow he gave no indication of pain or discomfort while driving, walking, sitting or standing.
The reasons for judgment of the district judge make no mention of his findings in regard to the plaintiff's contention of being permanently and totally disabled. However, this court is convinced, as the judge undoubtedly was, the preponderance of evidence establishes that while the plaintiff is unable to do the work of a safety supervisor with the Department of Highways he is able to perform satisfactorily the duties of his employment with the Cenla Bank without substantial pain and suffering. This being "gainful occupation for wages" within the intendment of LSA-R.S. 23:1221, the plaintiff is entitled to benefits for partial disability, not for total and permanent disability.
We must reject the plaintiff's contention that the "odd-lot" doctrine discussed in Larson's Workmen's Compensation Law, Section 57.51, is applicable in this case. Aside from its lack of recognition in our jurisprudence, Mr. Smith's condition has not left him completely helpless. It simply prevents him from excessive driving, sitting, standing and stooping. Certainly, there are other jobs besides a bank loan officer that he can perform which do not require such activities.
Next, we must determine whether the trial judge was correct in deducting the sums the plaintiff was paid by the Cenla Bank from the wages he was earning when injured on December 3, 1975, in computing his partial disability benefits under LSA-R.S. 23:1221(3). He contends that these were not really "wages" under the statute, but were given to him principally for his having helped organize the bank some years before and for his influence in the community.
There is nothing in the record to indicate that Smith was not earning the money he was paid by the bank or that he would continue to get such sums if his positions with that institution were terminated. According to his own testimony, he went to his office early in the mornings and it is obvious from the record that he was actively *1298 engaged in its affairs each business day. No one from the bank said that the plaintiff's position was a sinecure and the money was paid to him as a gratuity. We agree with the trial judge that such moneys were "wages" within the intent of our workmen's compensation act.
That term is defined in LSA-R.S. 23:1021(7) as follows:
"`Wages' means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows: (a) If the employee is paid on an hourly basis, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury or forty hours, whichever is greater; (b) If the employee is paid on a monthly basis, his monthly salary divided by four; (c) If the employee is employed at an annual salary, his annual salary divided by fifty-two; and (d) If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four; provided, however, that if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by four.
In Richmond v. Weiss & Goldring, Inc., 124 So.2d 601, 604, (La.App. 3 Cir. 1960) this court said:
"However, `In computing actual earnings as the beginning-point of wage basis calculations, there should be included not only wages and salary but any thing of value received as consideration for the work, such as tips and bonuses,' 2 Larson, Workmen's Compensation Law (1952), Section 60.12. `Any money paid the employee which can be regarded as remuneration or reward for his services should be included in fixing his compensation, irrespective of whether or not the payment was in the form of wages,' Malone, Louisiana Workmen's Compensation (1951), Sec. 329, P. 446. Thus, the trial court properly considered bonuses as well as wages in fixing the compensation rate. See Biggs v. Libbey-Owens-Ford Glass Co., La.App. 2 Cir., 170 So. 273."
Subsequently, in Deason v. Travelers Insurance Company, 242 So.2d 906 (La.App. 3 Cir. 1971) it was held that tips received by a waitress should be considered as a part of her weekly earnings in the computation of her weekly compensation benefits.
We are convinced that the employee's gross earnings must be used in the computation of workmen's compensation benefits, whether paid hourly, weekly, monthly or annually, or on a unit, piece work, commission, or other basis, including bonuses.
Except as noted above, neither side complains of the method employed by the trial court in computing the plaintiff's weekly compensation benefit for partial disability at $26.61. A more troublesome question is presented in connection with the defendants' claim for credit for the alleged overpayment of weekly compensation at the rate of $85.00 per week from January through September 16, 1977. The trial judge gave none, apparently because of the arbitrary termination of all benefits after September 16, 1977.
In this case the only money the plaintiff had actually earned and received from Cenla Bank before the $85.00 weekly payments were stopped were his fees as a director and loan officer amounting to $237.50 per month. Although it seems to have been generally understood that Mr. Smith was to receive a bonus at the end of each year, the record does not reflect that this was entirely certain. In any event, there was no way to determine the amount thereof until December. Consequently, when the weekly compensation benefits were paid in 1977 the only deductions that could have been made from plaintiff's salary when injured to determine the amount due him each week for *1299 partial disability were the fees he was being paid at that time. 662/3% of the difference between them and the plaintiff's prior salary, both computed on a weekly basis, exceeded the applicable maximum rate of $85.00 per week. Therefore, there really was no overpayment of compensation at the time it was terminated and the trial judge was correct in refusing to give any credit to defendants therefor as they contend. Our view might be different if the amount of the bonus to which the plaintiff was entitled at the end of the year was definite or even if there was an overpayment of weekly compensation after the amount of the bonus had been ascertained. However, we are not concerned with those situations in this case.
For the foregoing reasons, the judgment of the district court is affirmed. The costs of this appeal are assessed in the proportions of one-half to the plaintiff and one-half to the defendants.
AFFIRMED.