KLEES, Judge.
In this workmen’s compensation case, plaintiff, Michael Daigle, seeks supplemental earnings benefits under LSA-R.S. 23:1221(3)(a). The trial court rendered judgment denying these additional benefits. Plaintiff now appeals. We affirm.
Michael Daigle was employed as the manager of the Sherwin-Williams Paint Store on St. Charles Avenue in New Orleans when he injured his neck and back on May 12, 1984 while moving a case of paint. Prior to his employment at the St. Charles Avenue store, the plaintiff managed the Sherwin-Williams store in Hammond and also worked as a manager and salesman for Helm Paint and Supply in the New Orleans area. As a result of the accident, plaintiff underwent a cervical disc fusion in June, 1984. Dr. Kenneth Vogel, the neurosurgeon who performed the surgery, discharged Mr. Daigle in August, 1984. Dr. Vogel found that the plaintiff had a ten to fifteen percent anatomical disability and stated he could return to work as a store manager provided he did not lift, push or pull any object weighing more than fifty pounds. From the date of his injury until his discharge on August 30, the plaintiff collected worker’s compensation benefits in the amount of $245.00 per week in addition to his salary.
On appeal, plaintiff contends he is entitled to additional benefits in the form of supplemental earnings benefits as provided for in R.S. 23:1221(3)(a). Plaintiff bases his argument on the fact that, although he has returned to work in several different capacities since his maximum medical recovery, his earnings have been less than ninety percent of those earned while managing the Sherwin-Williams store on St. Charles Avenue.
LSA-R.S. 23:1221(3)(a) reads as follows:
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee’s inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
Under the clear wording of the statute, if an employee is prevented from returning to his former employment or work of a similar character but is not prevented from engaging in gainful activity at some job, he is considered partially disabled. McElhaney v. Belden Corporation, 376 So.2d 539 (La.App. 3rd Cir.1979).
Plaintiff argues that as the trial court found him to be partially disabled, the judge erred in not applying R.S. 23:1021(10)(d) in computing his average weekly wage. Plaintiff contends that although he received a base salary as a Sher-win-Williams store manager, more than half of his income was derived from commissions and bonuses, therefore, the provisions of R.S. 23:1021(10)(d) should apply in determining his average weekly wage before the accident.
R.S. 23:1021(10)(d) reads as follows:
(10) “Wages” means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows:
(d) Other wages. If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four; however, if such an employee has worked for the *358 employer for less than a twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by four.
Payroll records introduced at trial reveal that the plaintiffs gross pay for the twenty-six week period preceding the accident was $19,289.07 and that he worked eighty-two days during this twenty-six week period. Considering the argument advocated by plaintiff and using the “Other wages” formula cited above, plaintiffs average weekly wage is calculated as $940.00. Plaintiffs average weekly wage is then multiplied by the wage factor of 4.3 as provided in R.S. 23:1221(3)(a) and his average monthly wage is determined to be $4042.00.
It is well settled that employee’s gross earnings must be used in the computation of workmen’s compensation benefits, whether paid hourly, weekly, monthly or annually, or on a unit, piecework, commission, or other basis, including bonuses. Smith v. State of Louisiana, Department of Highways, 370 So.2d 1295 (La.App. 3rd Cir.1979), writ denied, 374 So.2d 661. Included in plaintiff’s method of calculation are two large bonuses in the amounts of $3675.00 received on December 31, 1983 and $7432.00 received on March 10, 1984, both paid within the twenty-six week period preceding the accident. It is apparent that calculating plaintiff’s average wages as a commission or piecemeal worker under R.S. 23:1021(10)(d) would yield a greater average monthly wage than computing his average wage as an hourly employee under subsection (10)(a) of the statute, which defendant Sherwin-Williams argues is applicable.
R.S. 23:1021(10)(a) states in pertinent part:
(10) “Wages” means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows:
(a) Hourly wages.
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or ...
A shorter time period is used in calculating plaintiff’s wages under subsection (10)(a) of the statute. Rather than using the twenty-six week period preceding the injury, only the four full week period preceding the date of the injury is used. Thus, under this method of calculation, the two large bonuses that plaintiff realized would not be included in computing his average weekly wage.
The evidence presented at trial indicates that plaintiff was not employed by Sher-win-Williams on a “unit, piecework, commission, or other basis”. The payroll records indicate that plaintiff was employed as a salaried employee who earned $788.00 every two weeks with overtime computed on an hourly basis and worked forty hours every week. Mr. Allen Labbe, district manager at Sherwin-Williams, testified at trial that in addition to the regular salary, there was a two-part incentive plan which enabled all store managers to receive extra compensation. The first part of the plan was based on the sales of the respective manager’s store. If the store’s volume of sales exceeded the store’s projected sales budget then the store manager received a bonus based on the percentage that the volume of sales exceeded the projected budget. Under the first part of the plan, the sales manager could receive the sales bonus only during the last six months of the year. The second part of Sherwin-Williams incentive plan was based on profit. A profit goal was set for the particular store and if the store reached or exceeded the goal, the store manager received a percentage of the profits. After reviewing the record, it is clear that the large bonuses plaintiff received prior to his injury were not commission.-payments but rather incentive type bonuses.
The issue of whether or not incentive bonuses should be included in computation of average wages for purposes of compensation benefits was discussed in McElha *359 ney v. Belden Corporation, supra and Allor v. Beldon Corporation, 393 So.2d 1233 (La.1981). In McElhaney, the injured plaintiff was a wire stranding operator trainee and, as such, was employed at a fixed hourly rate plus twenty percent of such rate as a bonus for each hour worked and was paid a guaranteed amount per hour regardless of how much wire was produced. In contrast, trained operators received a base hourly rate plus an incentive bonus which depended on the work output. The court concluded that the injured plaintiff trainee was not employed on a “unit, piecework, commision, or other basis” at the time of his injury and, therefore, his average weekly wage, for worker’s compensation purposes, was to be computed under the section relating to employees who are paid on an hourly basis. In Allor, the injured employee was a wire drawer operator who was no longer a trainee, and had not been a trainee for nearly thirty weeks. He received a base hourly rate, plus overtime pay for hours worked over forty hours each week at one and one half times his base hourly rate, plus an incentive bonus which had averaged forty percent of his base hourly rate during the four week period preceding his accident. The Supreme Court held that for purposes of determining permanent partial disability benefits, plaintiffs average weekly wage was to be computed on the basis that he was an hourly paid employee.
In the instant matter, plaintiffs bonus was not guaranteed but rather was an incentive plan bonus. It could not be determined in advance and would only be paid if sales exceeded the prospected budget and profits realized exceeded the set goal. We recognize, as did the trial court, that plaintiffs realized bonus was a one time occurrence due to the presence of the 1984 Louisiana World’s Fair in the vicinity of the store. When the Fair ended and construction ceased, the volume of sales substantially decreased. We find the trial court properly concluded that plaintiff was not a employee paid on a “unit, piecework, commission, or other basis.”
Next to consider is whether plaintiff has proved by a preponderance of the evidence that his work related injury resulted in his inability to earn wages equal to 90% or more of his wages at the time of his injury. Clark v. Welex, A Halliburton Company, 517 So.2d 1186 (La.App. 3rd Cir. 1988). We find he has not.
After his injury, plaintiff collected unemployment benefits in addition to his salary through August 30,1984, at which time Dr. Vogel discharged him and said he was able to return to work. Plaintiff did not return to work for Sherwin-Williams but rather opened his own paint store in Hammond. Plaintiff operated his store from October, 1984 through July, 1985 and his take home pay during this period averaged $600.00 per month. Plaintiff’s paint store closed in June, 1985 as a result of a breach of contract by the franchisor and not as a result of plaintiff’s disability. From July to December, plantiff was without work but finally found employment selling carpet averaging $250.00 per week and did this until February, 1986. In February, 1986, plaintiff went to work part-time for Canon Film as a set dresser while Canon was producing a film in New Orleans. At the time, plaintiff worked five to six days a week earning $65.00 per day. Eventually plaintiff became employed as a scenic artist, painting sets for movies in New Orleans, Los Ange-les and Atlanta earning more than $300.00 each week.
The evidence produced at trial demonstrated that plaintiff was disabled in that he could not manage the paint store for Sherwin-Williams because he could not lift, push or pull anything weighing more than fifty pounds. It did not show that plaintiff was no longer able to be a store manager. The record also revealed that the defendant employer tendered other employment available to the plaintiff. The burden is on the employer to show that such work is available to the employee. Clark v. Welex, A Halliburton Company, supra; Valley v. American Insurance Co., 510 So.2d 449 (La.App. 3rd Cir.1987). Mr. Fred Crane, a vocational rehabilitation specialist, testified that steady work was available and tendered to the plaintiff as required by R.S. *360 23:1221(3)(c)(i). These positions included a sales representative for an insurance company earning $35,000 per year, automobile salesman earning $427.00 per week, Stereo and TV salesman earning $341.00 and Furniture salesman making $314.00 per week. Sherwin-Williams also offered plaintiff a position as a regional sales representative which he turned down.
The findings of the trial judge are not to be disturbed unless found to be clearly erroneous. With this principle firmly in mind we have carefully examined the record and conclude the trial court properly found that plaintiff was not entitled to supplemental earnings benefits.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.