543 So.2d 544 (1989)
James MAIRE
v.
Louis CHARBONNET d/b/a Charbonnet Construction and United States Fidelity and Guaranty Company.
No. 88-CA-2387.
Court of Appeal of Louisiana, Fourth Circuit.
April 27, 1989.
George A. Guidry, New Orleans, for plaintiff-appellee James Maire.
Montgomery, Barnett, Brown, Read, Hammond & Mintz, Paul M. Lavelle, New Orleans, for defendant-appellant U.S. Fidelity and Guar. Ins. Co.
Before KLEES, BYRNES and WARD, JJ.
KLEES, Judge.
Plaintiff, Lawrence Maire, filed suit against Louis Charbonnet, d/b/a Charbonnet Enterprises, and its worker's compensation carrier, United States Fidelity and Guaranty Company, seeking supplemental earnings benefits under LSA-R.S. *545 23:1221(3)(a).[1] The trial court rendered judgment in favor of plaintiff awarding these benefits in the amount of $247.00 per week in addition to penalties and attorney fees for the defendants' arbitrary and capricious behavior in withholding the supplemental benefits. From this judgment, the defendants appeal.
Plaintiff and his brother, Ferdinand Maire, worked as carpenters primarily performing work on a bid proposal basis. Over a period of several years, they worked on various jobs contracted out by the defendant. Mr. Charbonnet would pay plaintiff and his brother a percentage of the total bid price for whatever portion of the work they completed in a given time. Plaintiff and his brother divided all monies they received from the work equally. The period of employment would depend upon the length of time necessary to complete a particular job.
On September 14, 1984, while on a job, plaintiff fell from a scaffold fracturing his right foot. Plaintiff underwent surgery and his foot was placed in a cast. In February 1985, Dr. James C. Butler, the treating physician, released the plaintiff to return to work as a carpenter with restrictions on standing no more than four hours per day, lifting to pain tolerance and no climbing of scaffolds or ladders. Dr. Butler's medical report assessed plaintiff's injury at fifty percent loss of use of his right lower extremity and an overall twenty percent anatomical disability. From the date of his injury until March 1985, plaintiff received temporary total disability benefits in the amount of $247.00 per week.
On appeal, the defendants contend the trial court erred in granting plaintiff supplemental earnings benefits provided for in LSA-R.S. 23:1221(3)(a). They contend plaintiff failed to prove that his earnings since his medical discharge are less than ninety percent of his earnings at the time of his injury. They argue that rental payments plaintiff received from properties he owned should have been included as wages in determining his earnings for the purposes of worker's compensation benefits.
LSA-R.S. 23:1221(3)(a) reads as follows:
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
To qualify for supplemental earnings benefits under LSA-R.S. 23:1221(3)(a), a plaintiff is required to prove by a preponderance of the evidence that a work related injury resulted in his inability to earn wages equal to ninety percent or more of his wages at the time of injury. Valley v. American Insurance Company, 510 So.2d 449 (La.App. 3d Cir.1987).
The evidence before us supports the trial court's finding that plaintiff was employed on a unit or piecework basis. Hence, plaintiff's average monthly wages are calculated in accordance with LSA-R.S. 23:1021(10)(d), which reads as follows:
(d) Other wages. If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days *546 the employee actually worked for the employer during said twenty-six week period and multiplied by four; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employed actually worked for the employer during said period and multiplied by four.
According to the trial judge's Reasons for Judgment, during the twenty-six week period prior to plaintiff's injury, plaintiff worked "approximately twenty-six days" for Charbonnet Enterprises and earned $400.00 per week. Based on the evidence in the record, we are unable to ascertain how the trial court determined that plaintiff worked for the defendant twenty-six days during the twenty-six weeks preceding the injury. The evidence introduced at trial includes Charbonnet's earnings records for plaintiff for the period from February 1984 to April 1985, a copy of plaintiff's 1984 federal income tax return and plaintiff's miscellaneous income form 1099 for the years 1983, 1984 and 1985.
The earnings records reflect that plaintiff earned wages of $3950.00 while working for Charbonnet Enterprises during the twenty-six weeks prior to his accident. The earnings records also reveal that Charbonnet Enterprises paid plaintiff these wages with seven different checks of varying amounts on seven different dates, but they fail to show the exact number of days plaintiff worked during the twenty-six week period in question. Likewise, the record is devoid of any testimonial evidence which would indicate the number of days plaintiff worked during that twenty-six week period. It should also be noted that in his brief and in his post-trial memorandum, plaintiff contends that he worked twenty-nine days rather than twenty-six days during the twenty-six weeks preceding the accident. Without evidence in the record which establishes the exact number of days that plaintiff worked during the twenty-six week period, we cannot calculate plaintiff's average monthly wages at the time of the accident.
Furthermore, where the evidence in the record establishes that plaintiff's gross earnings for the twenty-six weeks prior to his injury are $3950.00, the trial court's finding that plaintiff is entitled to supplemental benefits in the amount of $247.00 per week is not consistent with its finding that plaintiff earned $400.00 per week. Assuming arguendo that the trial court's finding that plaintiff earned $400.00 per week at the time of the injury is correct, using this amount and the formula provided for in LSA-R.S. 23:1221(3)(a), plaintiff would get supplemental earnings benefits in the amount of $167.98 per week and not $247.00 per week as concluded by the trial court.
Defendants also argue that the monthly rental plaintiff and his wife received from two double houses that they owned should be included in determining plaintiff's average monthly wages at the time of his injury. We disagree. Defendants cite the case of Smith v. State of Louisiana, Department of Highways, 370 So.2d 1295 (La.App. 3d Cir.1979) in support of their contentions. In Smith, wages included money paid to the claimant from a bank where the record showed that the claimant was actively engaged in the bank's business affairs each day supervising loans and providing other services. The money was not a gratuity nor a guaranteed amount that he would continue to get if his position with the bank terminated. In the instant case plaintiff was not actively engaged in managing these two double houses. Mrs. Maire would issue the receipts to the tenants for their rents. One of the houses required painting, and plaintiff paid his nephew to do the work. We do not find that the rentals received are "wages" within the meaning of the worker's compensation statute.
For the foregoing reasons, the judgment of the trial court is set aside. In accordance with our findings expressed herein, we remand the case to the lower court in order to re-calculate plaintiff's average monthly wages and to determine whether *547 plaintiff is entitled to supplemental earnings benefits, and, if so, the amount, and whether or not plaintiff is entitled to penalties and attorney fees.
SET ASIDE AND REMANDED.
NOTES
[1] This case's caption, "James Maire v. Louis Charbonnet ..." was incorrect. The pleadings were subsequently amended to reflect the proper identities of the parties, Lawrence Maire and Hunter Charbonnet.