671 So.2d 963 (1996)
J.W. PARKER
v.
NATIONAL LINEN SERVICE.
No. 95-CA-0500.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1996.
*965 Nicolas Estiverne, Nicolas Estiverne & Associates, New Orleans, for plaintiff/appellant, J.W. Parker.
George J. Nalley, Jr., David A. Parsiola, George J. Nalley, Jr., A Professional Law Corporation, Metairie, for defendant/appellee, National Linen Service.
Before BYRNES, CIACCIO and MURRAY, JJ.
MURRAY, Judge.
J.W. Parker appeals a judgment denying him workers compensation benefits and attorney's fees.
On April 1, 1992, while working as a washer for National Linen Service, Inc. (National), Mr. Parker allegedly slipped and fell in the National washroom. Mark Golay and Bernell Blue, co-workers who were working in the immediate vicinity of the alleged accident, neither heard nor saw anything that suggested that Mr. Parker had fallen. Mr. Parker claimed to have injured his back, and was taken to the Emergency Room of Pendelton Memorial Methodist Hospital treatment. At the hospital, he was informed that National policy required that he undergo a drug test. He initially refused to submit to the drug test but later agreed. He was examined by Dr. Lloyd Gueringer, an emergency room physician, who instructed him to see Dr. Terry Segura at the Methodist Occupational and Industrial Medicine Clinic the next day for a follow-up examination.
Mr. Nick Afsom, Director of Operations at National, testified that Mr. Parker was scheduled to see Dr. Segura on April 2, 1992. However, the clinic notified Mr. Afsom that Mr. Parker had not shown up for his appointment. Mr. Afsom then telephoned Mr. Parker, and told him to go to the doctor immediately and to come to the plant afterward. Mr. Parker did as he was instructed. Dr. Segura examined him and diagnosed a lumbosacral strain, based on the history given to him by Mr. Parker, and released him to light-duty work.
Mr. Parker then went to National where Mr. Afsom informed him that he was not fired. Mr. Afsom testified that he then offered Mr. Parker light-duty work stringing bags, which was within the limitations imposed by Dr. Segura, at the same rate of pay as his pre-injury job. Mr. Parker disputed ever being offered light-duty work. Dr. Segura saw Mr. Parker again on April 6, 1992, and again released him to light-duty, but he contended he was unable to do any work.
Mr. Afsom testified that Mr. Parker's twice refusing work consistent with his release to light-duty by Dr. Segura constituted unexcused absences from work. On April 8, 1992, Mr. Afsom called Mr. Parker to the office and gave him a warning notice for unexcused absences from work on April 2, 3, 6 and 7 in the presence of Danny Binder and a union representative. Mr. Afsom testified that this was Mr. Parker's fourth warning notice. National policy dictated that an employee who received four warning notices in a six month period be terminated. Consequently, Mr. Parker was terminated on April 8, 1992.
After his termination, Mr. Parker contacted an attorney who referred him to Dr. Henry Evans for a medical evaluation and treatment. Dr. Evans first examined Mr. Parker on April 10, 1992, at which time he diagnosed a lumbar sprain, and found Mr. Parker to be completely and totally disabled for at least a week. Dr. Evans continued to see Mr. Parker on a regular basis and each time Dr. Evans found him totally disabled. Dr. Evans last saw Mr. Parker on February 11, 1993, at which time he found that he remained totally disabled.
In the days following Mr. Parker's accident, several witnesses allegedly saw him engaging in activity that was inconsistent with the pain that he complained of and that he claimed prevented him from performing the light-duty job offered to him. Mr. Daniel Binder testified that he saw Mr. Parker walking in a normal stride down Downman *966 Road on April 6, but two days later, at the National plant, he was walking hunched over, taking small steps, and using a cane. Mark Golay, a production supervisor at National, testified that after Mr. Parker refused light-duty alleging his inability to perform the duties he witnessed Mr. Parker becoming upset and moving his hands around a great deal. Stringing bags, the light-duty offered Mr. Parker, would require that he move his hands around in the same manner he had when he got upset. Lewis Frught, a production supervisor, saw Mr. Parker a few days after he refused light-duty sitting in car in the National parking lot. He testified that Mr. Parker was sitting in the "door jam" turned around at the waist talking to the person in the driver's seat. He thought it was strange that Mr. Parker was able to sit in such a position only a few days after he was unable to perform the light-duty work offered to him.
Dr. Gordon Nutik examined Mr. Parker twice on behalf of National with the first examination taking place in October of 1992. Dr. Nutik testified that he found no objective clinical findings of active nerve root irritation in Mr. Parker's lower back. Dr. Nutik stated that he could not relate Mr. Parker's complaints about his neck to his injury at work because of the delayed onset. The reports Dr. Nutik received from Mr. Parker's treating physicians do not show any complaints related to the neck until June of 1992. Dr. Nutik stated that his finding were inconsistent suggesting that Mr. Parker was able to move his back more than he was willing to demonstrate in the examination.
Mr. Parker filed a worker's compensation claim seeking weekly benefits, medical expenses, travel reimbursement, interest and attorney's fees. Trial was held on January 12, 1994. The hearing officer entered judgment in favor of Mr. Parker as to the compensability of medical expenses of $1,395.00 incurred for treatment by Dr. Evans, but dismissed all other claims with prejudice. In his reasons for judgment, the hearing officer found that the circumstantial evidence supported Mr. Parker's testimony that he had suffered a compensable injury on April 1, 1992. However, he questioned Mr. Parker's credibility as to whether he had been offered light-duty work within the job restrictions imposed by Dr. Segura. For this reason, he found that such an offer had been made, but refused by Mr. Parker without justification. This appeal followed.[1]
Mr. Parker contends that the trial court erred when it found that he had suffered a compensable injury, but failed to award him weekly compensation benefits. We disagree.
In order to be entitled to weekly benefits in a worker's compensation claim, the work-related injury must be disabling, whether it be temporary or permanent. Kennedy v. Security Indus. Ins. Co., 623 So.2d 174, 176 (La.App. 1st Cir.1993). A worker claiming entitlement to supplemental earnings benefits (SEB) based on a partial disability must prove partial disability as a result of a work-related injury and the inability to earn 90% of the wages he earned before the injury. Maire v. Charbonnet, 543 So.2d 544 (La.App. 4th Cir.1989). Therefore, an employee offered light-duty at the same wage as their pre-injury wage would not be entitled to supplemental benefit earnings. Augustine v. Paul Wall Truck Line Inc., 603 So.2d 770 (La.App. 3rd Cir.1992).
The hearing officer found that Mr. Parker suffered a compensable injury on April 1, 1992. However, he also found that he had been offered work, within the physical limitations imposed by Dr. Segura, at his pre-injury wage, but refused this work without justification. He questioned Mr. Parker's credibility based on evidence that he was exaggerating his symptoms and evidence that showed that Mr. Parker was offered light-duty work in the aftermath of past injuries.
The fact finder enjoys great deference on its findings of the credibility of a claimant in a worker's compensation case. Dominick v. CNA Insurance Company, 497 So.2d 758 (La.App. 3rd Cir.1986), writ denied *967 501 So.2d 231 (La.1987). Additionally, a trial court's determination regarding whether work-related disability resulted is a factual finding that must be upheld unless it is clearly wrong. Valley v. American Ins. Co., 510 So.2d 449 (La.App. 3rd Cir.1987), writ denied, 514 So.2d 130 (La.1987). This court is bound by the manifest error or clearly wrong standard and should not disturb reasonable inferences of fact regardless of conflicts in testimony. Winford Co., Inc. v. Webster Gravel and Asphalt, Inc., 571 So.2d 802 (La.App. 2nd Cir.1990). The trial court's choice between two permissible views of the evidence can not be considered manifest error. Coley v. Wilson Oil Co., Inc., 620 So.2d 445 (La.App. 3rd Cir.1993).
The reasons for judgment did not address Dr. Evans' opinion that Mr. Parker was totally disabled from any work during the entire time he treated him, although the hearing officer implicitly rejected this opinion. We note that a plaintiff's treating doctor's diagnosis and opinions are deserving of more weight than that of doctors examining plaintiff in contemplation of litigation. However, medical testimony must be weighed in the light of credible evidence of a nonmedical character. Orgeron v. Prescott, 93-926 (La. App. 5th Cir. 4/14/94), 636 So.2d 1033; reh'g denied writ denied 644 So.2d 654 (La.1994); Vicknair v. So. Farm Bureau Casualty Ins. Co., 292 So.2d 747 (La.App. 4th Cir.1974), writ denied 296 So.2d 838 (La.1974).
The record supports the hearing officer's determination that Mr. Parker was offered, but unjustifiably refused, work within his physical limitations at his preinjury wage. Therefore, the trial court correctly found that he was not entitled to weekly compensation benefits.
Mr. Parker also argues that the hearing officer erred in failing to award him attorney's fees for National's failure to pay medical expenses to Dr. Evans in a timely fashion.
If benefits are not paid within sixty days and if the trial court finds that failure to pay is arbitrary and capricious, R.S. 23:1201.2 provides for attorney's fees to be awarded to the employee. La.Rev.Stat.Ann. 23:1201.2 (West Supp.1996), Washington v. Southern Baptist Hospital, 506 So.2d 144 (La.App. 4th Cir.1987). Attorney's fees are not warranted when a rational basis for refusing to pay the claimant can be found. Lacava v. Albano Cleaners, 94-1586 (La.App. 1 Cir. 4/7/95), 653 So.2d 834, judgment aff'd in part, rev'd in part, 95-1141 (La. 6/27/95) 656 So.2d 990.
The trial court found that National's denial of benefits was not arbitrary and capricious. The hearing officer based this finding on the fact that the accident was unwitnessed, that Mr. Parker initially was uncooperative concerning the drug testing, and because he was witnessed exaggerating his symptoms shortly after the accident.
The decision of whether attorney's fees are justified is one of fact and a reviewing court should not disturb that finding unless it is manifestly erroneous. Valley v. American Ins. Co., 510 So.2d 449 (La.App. 3rd Cir.1987) writ denied, 514 So.2d 130 (La. 1987). This court has consistently held that a trial court is afforded much discretion in determining whether to impose attorney's fees. Washington v. Southern Baptist Hospital, 506 So.2d 144, 146 (La.App. 4th Cir. 1987); Flint v. Rockwood Ins. Co., 455 So.2d 1251 (La.App. 4th Cir.1984). We cannot say that the trial court erred when it determined that National did not act arbitrarily and capriciously in denying benefits, including refusing to pay for Dr. Evans' treatment.
For the foregoing reasons the judgment denying Mr. Parker's claim for weekly benefits and attorneys' fees is affirmed.
AFFIRMED.
NOTES
[1] National also appealed the award of medical expenses for treatment by Dr. Evans, but later dismissed its appeal.