710 So.2d 1106 (1998)
Rickey J. DABNEY
v.
BOH BROTHERS CONSTRUCTION COMPANY.
Nos. 97-CA-1041, 97-CA-2502.
Court of Appeal of Louisiana, Fourth Circuit.
March 11, 1998.
*1107 J. Paul Demarest, Favret, Demarest, Russo & Lutkewitte, New Orleans, for Plaintiff/Appellee.
Richard Vale, Blue Williams, L.L.P., Metairie, for Defendant/Appellant.
Before BARRY, WALTZER and LANDRIEU, JJ.
WALTZER, Judge.
Defendant, Boh Brothers Construction Company, vigorously defended a claim for workers' compensation by Rickey Dabney for an injury to his back on 7 December 1994. After two hearings, the trial court awarded Dabney maximum supplemental earnings benefits and certain medical expenses, assessed penalties and attorney's fees against the defendant for its refusal to pay claimant benefits and its refusal to allow him to change treating orthopedists, and reduced claimant's benefits for his refusal to cooperate with appropriate rehabilitation.

STATEMENT OF THE CASE
On 7 December 1994, Dabney suffered an injury to his back in the course and scope of his employment with Boh Brothers. On 15 February 1995, Dabney filed a disputed claim for benefits with the Office of Workers' Compensation. The trial court conducted a trial of the matter on 25 November 1996, and signed a judgment on 11 December 1996. The trial court ordered Boh Brothers to pay Dabney benefits in the amount of "$254.94 from February 28, 1995 until terminated by this court." The court calculated the claimant's average weekly wage by his hourly wage times forty hours per week, totaling $382.80. The court ruled that the employer and insurer acted arbitrarily and capriciously in refusing to pay Dabney benefits and awarded penalties and attorney's fees, in the amounts of $2,000.00 and $8,000.00, respectively. The trial court found that the employer had chosen Dr. Stephen Flood to examine and evaluate the claimant on 30 January 1995, and arbitrarily and capriciously denied the claimant his choice of orthopedist, Dr. James Butler, and again assessed a $1,000.00 penalty and $2,000.00 in attorney's fees against the employer. Boh Brothers timely appealed.
On 23 May 1997, the trial court heard additional evidence on the disputed claim and rendered a second judgment on additional issues on 18 June 1997. The trial court in its second judgment found that the claimant had not cooperated with vocational rehabilitation and reduced his benefits by fifty percent from 25 November 1996, pursuant to LSA-R.S. 23:1226(E). However, the court further ordered the employer to reduce the reduction in proportion to claimant's school attendance. The June Judgment also provided: "This Court further finds that claimant is not temporarily totally disabled. This Court finds that claimant can work. However, this Court further finds that, thus far, employer has not shown available employment to employee...." Defendant again timely appealed. Claimant answered the defendant's appeal and requested additional attorney's fees *1108 for defending the appeals.[1] The two appeals were consolidated.

STATEMENT OF FACTS
A careful review of the entire record of the consolidated appeals reveals proof of some of the arguments proposed, but certainly not all of the facts alleged, by both the appellee and the appellant. Clearly, the record establishes certain facts. On 7 December 1994, the claimant, Rickey J. Dabney, injured his back while he shoveled asphalt on a job for his employer, Boh Brothers. Boh Brothers employed the claimant from May 1992, until January 1995. Dabney worked for $9.57 an hour when Boh Brothers had the work for him to do. Dabney shoveled asphalt, used a jackhammer, and generally served his employer as a laborer in its asphalt department. The availability of work for employees in this department depends on conditions largely out of the control of the employer and the employee, including the weather and the types of jobs contracted by the public. Clearly, Boh Brothers paid Dabney only for the hours he worked.
After his 7 December 1994 injury, the claimant reported to his supervisor, Mathew Butler. Mr. Butler reported the injury to the employer, Boh Brothers, and the insurer. Boh Brothers provided medical treatment to the claimant and referred him to Methodist Occupational and Industrial Medical Clinic. Claimant treated with this clinic under the care of various doctors from 8 December 1994, until his discharge on 30 January 1995. Drs. Paul F. Naccari, Jr., J. Terry Segura, and Robert J. Segura, diagnosed and treated claimant for a lumbosacral strain. The doctors prescribed that Dabney return to work with certain limitations, including no climbing ladders, no work requiring repetitive bending of the back and no lifting over 25 pounds. The restrictions were removed by the treating physician on 30 December 1994, except Dr. Naccari apparently reinstated the restrictions on 16 January 1995. Finally, Dr. Naccari discharged the claimant from the clinic's care on 30 January 1995.
On 14 January 1995, claimant sought and received treatment from Dr. Thomas M. Dupont, chiropractor. Dr. Dupont determined that "Dabney is on total temporary disability" from 14 January 1994, until 15 April 1995.
On 30 January 1995, Dr. Stephen Flood, orthopedist, examined the claimant and evaluated his back injury. Dr. Flood diagnosed "syndrome lumbar" and prescribed "light work". The claimant did not return to Dr. Flood until 14 August 1995. The claimant treated continuously with Dr. Flood from 14 August 1995 until the trial date. The doctor explained in his deposition that he considered the claimant confined to "light duty" with the original restrictions until 27 September 1995, when the claimant's disability status changed to "total temporary". On 5 February 1996, after completing various treatment options and several diagnostic tests, Dr. Flood recommended a discography to determine the need for surgery. In December 1996, after the first hearing in this matter, Dr. Flood opined that the claimant could return to work with certain limitations. Specifically, Dr. Flood agreed that the claimant could do light duty work.
On one occasion, on 31 May 1995, claimant sought treatment from a second orthopedic surgeon, Dr. James Butler, with a referral from his family physician, Dr. Henry Evans, on 26 May 1995. Dr. Butler determined that the MRI of claimant's lumbar spine indicated degenerative disc disease predating the accident. The doctor also opined that the claimant is not "capable of construction work at this time since in my opinion he needs further assessment."
Defendants had Mr. Dabney examined by Dr. Gordon Nutik, orthopedic surgeon on 20 September 1995. Dr. Nutik further reviewed the claimant's medical records. Dr. Nutik also performed x-rays of claimant's lumbar spine. Dr. Nutik concluded that the claimant suffered "non-specific degenerative changes at the L-5 sacral disc." However, Dr. Nutik opined that he "had difficulty relating the changes on the MRI scan to the reported incident where he was shoveling at work." Dr. Nutik recommended "on a hypothetical *1109 basis" further diagnostic tests, including nerve conduction studies of the left and right lower extremities. Finally, Dr. Nutik determined that claimant could return to work with certain restrictions, no lifting over 75 lbs.
Boh Brother's requested and obtained an independent medical examination of the claimant. Dr. Gustavo Gutnisky, a neurosurgeon, reviewed the claimant's medical records, the accident report and the various reports of other examining doctors. On 1 July 1996, Dr. Gutnisky examined the claimant. Claimant's examination by Dr. Gutnisky revealed "[n]o objective findings of claimant's back problem". After reviewing claimant's x-rays, Dr. Gutnisky determined that the claimant had two congenital abnormalities in the lumbosacral region of his back, with an associated bulging disc. The doctor observed no nerve root impingement. Dr. Gutnisky recommended a program of physical therapy and exercise and a functional capacity evaluation. He ruled out the possibility of surgery to correct claimant's congenital problems, thus he disagreed with Dr. Flood's recommendation of a discography. The doctor further opined that the claimant "should be able to return to some gainful employment, although it may not be wise to return to heavy work". Dr. Gutnisky explained that the defendant presently is capable of "light duty work". Dr. Gutnisky examined the claimant a second time on 28 October 1996, after the claimant completed a regimen of physical therapy. He opined that the claimant's work capacity should be in the "medium" range, although he stated that he generally deferred to the results of the functional capacity evaluation unless the results did not support his expectation and could not be supported.
Mr. Dabney underwent two functional capacity evaluations, concluding that the claimant could perform light to medium work. Dr. Gutnisky, in his second deposition, speculated about the claimant's work capacity, and the results confirmed his opinion. Dr. Flood agreed with the results of the evaluation that the claimant could return to work requiring light duty in December 1996.

STANDARD OF REVIEW
Boh Brothers appeals several factual determinations of the trial court, including the choice of treating orthopedic surgeons, calculation of the claimant's average weekly wage, claimant's inability to earn at least ninety percent of his pre-injury wages and the determination of claimant's proven postinjury earning capacity. Appellate courts review factual findings of a workers' compensation judge subject to the manifest error-clearly erroneous standard. Banks v. Industrial Roofing and Sheet Metal Works, Inc. 96-2840 (La.7/1/97); 696 So.2d 551, 556. On review of factual findings, appellate courts determine the reasonableness of the factfinder's conclusions. Id. Where two permissible views of the evidence exist, the factfinder's choice can never be manifestly erroneous or clearly wrong. Appellate courts reverse factual findings by the trial court when the findings are not reasonable in light of the record reviewed in its entirety. Banks, supra at 556; citing Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990).
FIRST ASSIGNMENT OF ERROR: The trial court erred in determining that the claimant was denied his choice of orthopedic surgeons and awarding penalties and attorney's fees.
The trial court found that the claimant had not chosen Dr. Flood to be his treating orthopedic surgeon. The court further concluded that the employer/insurer wrongly denied the claimant's request that another orthopedic surgeon, Dr. James Butler, treat the claimant. LSA-R.S.23:1121(B) grants an employee the right to select a physician in a given specialty. Mr. Dabney saw Dr. Flood on 30 January 1995, for an evaluation. Dr. Flood testified that he believed the employer/insurer requested the evaluation. Claimant testified that he did not choose to see Dr. Flood in January 1995. Defendant offered no evidence to contradict the claimant's contentions.
Defendant argues that the claimant failed to prove the employer/insurer wrongly refused to grant the claimant's request to change orthopedic surgeons. However, the trial court found that the employer chose Dr. *1110 Flood to evaluate claimant in January 1995, and therefore, the claimant had a right to choose treatment by Dr. James Butler, another orthopedic surgeon, in May 1995. The defendant again offered no evidence to support their allegations that the claimant was shopping for "a physician who will tell you what you want to hear." The defendant offered no evidence that the claimant requested a change in orthopedic surgeons and that the request was denied for the reasons the defendant alleges in its briefs.
However, the claimant offered significant proof that he sought treatment from Dr. Butler after a referral from his family physician. Furthermore, the claimant testified that the employer/insurer denied his request for treatment from his first choice of orthopedic surgeons, Dr. Butler. Claimant's allegations are further buttressed by his medical records.
The employer/insurer argues that the claimant chose to treat with Dr. Flood, upon referral by his first attorney, in January 1995, but the defendant offered no evidence to support their speculation. A claims adjuster testified at the trial, but he failed to mention who chose Dr. Flood to evaluate the claimant in January 1995. Claimant testified he returned to Dr. Flood for treatment after the defendant refused his choice of orthopedic surgeons, Dr. Butler, and continued to treat with Dr. Flood continuously until trial. When the court asked the claimant whether he was satisfied with Dr. Flood's treatment, he responded affirmatively. Accordingly, the trial court correctly determined that the claimant had acquiesced in treatment by Dr. Flood and "recognized as claimant's selection of treating orthopedic surgeon".
Defendant argues that the trial court wrongly awarded penalties and attorneys' fees for its refusal to allow claimant to choose an orthopedic surgeon. LSA-R.S. 23:1121(C) provides, in pertinent part:
If the employer or insurer has not consented to the employee's request to change physicians when such consent is required by this Section, and it is determined by a court having jurisdiction that the withholding of such consent was arbitrary or capricious, or without probable cause, the employer or the insurer shall be liable to the employee for reasonable attorney's fees related to this dispute and for any medical expenses so incurred by him for an aggravation of the employee's condition, resulting from the withholding of such physician's services.
Because the trial court found that the claimant's request for treatment from Dr. Butler in May 1995 did not constitute a request "to change physicians", and this court finds no error in this finding, the award of penalties and attorney's fees was not allowed by the law. Claimant's remedy for the employer's denial of his request to treat with his choice of orthopedists was to move the court for such an order to avoid this situation. The trial court, and the record supports this finding, found that the claimant acquiesced in Dr. Flood's treatment. The claimant offered no evidence to support the assessment of penalties and attorney's fees. Therefore, the trial court's judgment of 11 December 1996, awarding penalties in the amount of $1,000.00 and attorney's fees in the amount of $2,000.00 against the employer/insurer "for its refusal to allow Rickey J. Dabney to be treated by Dr. Butler[.]", is reversed.
SECOND ASSIGNMENT OF ERROR: The trial court erred by calculating the claimant's average weekly wage using his hourly wage, nine dollars and fiftyseven cents ($9.57), multiplied by forty (40) hours.
Defendant paid claimant supplemental earnings benefits until 27 February 1995, and again from September 1996, until 11 May 1997, calculating his average weekly wage by multiplying $9.57 "by the average actual hours worked in the four full weeks preceding the date of the injury." The trial court ordered the defendant to pay the claimant supplemental earnings benefits determined by calculating his average weekly wage by multiplying his hourly wage by "forty hours". Claimant worked for defendant for two years, and defendant paid claimant an hourly wage of $9.57 for the hours claimant actually worked. LSA-R.S. 23:1021(10) provides, in pertinent part:
"Wages" means average weekly wage at the time of the accident. The average *1111 weekly wage shall be determined as follows:
(a) Hourly wages.
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or
(ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident; or
(iii) If the employee is paid on an hourly basis and the employee is a part-time employee, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury.
The defendant calculated the claimant's average weekly wage using the formula from either LSA-R.S. 23:1021(10)(a)(ii) or LSA-R.S. 23:1021(10)(a)(iii), but after the November 1996 trial, the trial court determined the claimant's average weekly wages using the formula outlined in LSA-R.S. 23:1021(10)(a)(i).
LSA-R.S. 23:1021(9) defines "part-time employee" as one "who as a condition of his hiring knowingly accepts employment that (a) customarily provides for less than forty hours per work week, and (b) that is classified by the employer as a part-time position." The record reflects that the claimant did not know when he took the job with Boh Brothers, two years before the accident, either that Boh Brothers classified the job as "parttime" or that the job "customarily" provided fewer than forty hours per work week. The record contains no evidence that Boh Brothers classified the claimant's job as "parttime". Although the claimant admitted when Boh Brothers hired him, Mr. Scaffidi, claimant's supervisor, explained that claimant could work as weather and availability permitted, Boh Brothers offered no evidence that when it hired the claimant, he was told that the job was considered "part-time" and customarily allowed less than forty hours per work week. A review of the claimant's payroll records reveal that the claimant, more often than not, worked a forty hour work week. Moreover, the defendant offered no evidence that the claimant worked less than forty hours per work week "at his own discretion". On the contrary, the claimant testified that he worked whenever and however many hours his employer demanded. Defendant argues that the claimant was not "guaranteed" forty hours every work week, but this court is not persuaded that such a requirement exists to allow application of LSA-R.S. 23:1021(10)(a)(i). The trial court's calculation of the claimant's average weekly wage was not clearly wrong. Therefore, we affirm the trial court's award calculating the claimant's average weekly wage using the formula from LSA-R.S. 23:1021(10)(a)(i), multiplying forty hours by his pre-injury wage of $9.57 (40 hours × $9.57 = $382.80), and determining that claimant's average weekly wage equals $382.80.
THIRD ASSIGNMENT OF ERROR: The trial court erred by awarding the claimant supplemental earnings benefits because he failed to prove his inability to earn at least ninety percent of his preinjury wages, since he worked for Boh Brothers after the accident.
Defendant argues because the claimant worked for the same wages before and after the accident, he is precluded from receiving supplemental earnings benefits. A worker claiming entitlement to supplemental earnings benefits based on a partial disability as a result of a work-related injury must prove his inability to earn ninety percent (90%) of the wages he earned before his injury. Parker v. National Linen Service, 95-0500 (La.App. 4 Cir. 3/14/96); 671 So.2d 963, 966; citing Maire v. Charbonnet, 543 So.2d 544 (La.App. 4 Cir.1989). The employee bears the initial burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Banks, supra at 556; citing Freeman v. Poulan/Weed Eater, 93-1530 *1112 (La.1/14/94); 630 So.2d 733, 739. Generally, an employee offered light-duty at the same wage would not be entitled to supplemental earnings benefits. Parker, supra at 966; citing Augustine v. Paul Wall Truck Line, Inc. 91-291 (La.App. 3 Cir. 6/24/92); 603 So.2d 770. Because we do not find error with the trial court's conclusion that Boh Brothers failed to offer claimant suitable light duty work which he could continue performing, the wages he earned for a few weeks after the accident do not preclude him from thereafter proving his inability to earn at least ninety percent (90%) of his preinjury wages.
On 7 December 1994, claimant suffered an injury to his lower back while he worked, shoveling asphalt for the defendant. Claimant treated with Dr. Segura's clinic and returned to work at Boh Brothers at the same hourly wage. For several weeks, Dr. Segura prescribed light-duty, including no repetitive bending, no lifting over twenty-five (25) lbs. and no climbing stairs. The claimant testified that he returned to work for Boh Brothers after the accident and earned nine dollars and fifty-seven cents ($9.57) per hour, his pre-injury wage. He further agreed that he worked for several weeks after the accident. Furthermore, plaintiff's payroll records reflect that Boh Brothers paid the claimant for several weeks of work after the accident. Defendants argue since the claimant returned to work after the accident, he should be denied benefits. However, the record reveals a conflict between the witnesses' testimony concerning whether Boh Brothers offered the claimant light duty work. Claimant testified that his immediate supervisor, Mathew Butler, informed the claimant he was needed to shovel asphalt, Dabney's regular duties, and should not return if he was unable to perform his regular duties. However, Mr. Butler testified that he offered the claimant work which he believed complied with the restrictions, even after Dr. Segura removed the restrictions, and the claimant refused without attempting the job. Moreover, defendant offered no evidence that the work offered to the claimant complied with Dr. Segura's restrictions. Defendant never sought a doctor's approval of the work Boh Brothers offered the claimant after the accident. The trial court concluded that defendant had not offered the claimant light duty work in compliance with the treating doctor's restrictions. The trial court chose to believe the claimant's testimony rather than Mr. Butler's testimony, and defendant had no other evidence.
Even though claimant worked at his regular rate of pay after the accident, he ceased earning any wages when he quit after ordered to return to regular duties, and his injury prevented him from performing his regular duties. Mr. Dabney's subsequent medical treatment supports the conclusion that he was unable to perform the work he was asked to do by Boh Brothers after the accident. Dr. Segura and Dr. Naccari released the claimant to return to his regular duties, but Dr. Flood, Dr. Gutnisky and Dr. Nutik agree that the claimant is unable to perform his regular duties. Drs. Flood, Gutnisky and Nutik disagree on the necessary treatment and Mr. Dabney's degree of disability. However, none of the specialists, including the employer's choice of orthopedist and the court-appointed neurosurgeon and the treating orthopedist, have released Mr. Dabney to return to his regular duties without any restrictions. Furthermore, both Dr. Flood and Dr. Gutnisky agree that Mr. Dabney is not capable of returning to the manual labor offered by Boh Brothers.
This case is clearly distinguishable from the facts in Parker, where the claimant was offered suitable light duty work, within the doctor's limitations, and the claimant refused the work without any justification. Claimant met his initial burden of proof that the injury of 7 December 1994, resulted in him earning less than ninety percent (90%) of his preinjury wages.
We are unable to conclude from a review of the entire record that the trial court erred when it determined that the claimant established a prima facie case that he is unable to earn at least ninety percent of his pre-injury wages, simply because the claimant worked for a few weeks after the accident for the same hourly wage. Therefore, the trial court's finding that the claimant has proven *1113 his entitlement to supplemental earnings benefits is affirmed.
FOURTH ASSIGNMENT OF ERROR: The trial court erred by assessing a $2,000.00 penalty and $8,000.00 in attorney's fees against the defendant for its termination of the claimant's supplemental earnings benefits.
Defendant argues that the trial court wrongly assessed penalties and attorney's fees for its termination of Mr. Dabney's benefits in February 1995, after Dr. Segura's discharge and Dr. Flood's evaluation on 30 January 1995.
LSA-R.S. 23:1201.2, as that statute existed on the date of the injury, 7 December 1994, entitled a claimant to recover reasonable attorney fees if the employer or its insurer discontinues payment of compensation, when the discontinuance is found to be arbitrary, capricious or without probable cause. Banks, supra at 557. A claimant, under LSA-R.S. 23:1201(E), is entitled to recover additional penalties from the employer for any compensation that is payable without an order, but which the employer has failed to pay. The amount of recoverable penalties is equal to twelve percent of the unpaid compensation or fifty dollars per calendar day for each day that the compensation remained unpaid, whichever is greater, up to a maximum aggregate amount of two thousand dollars. However, these penalties are not available if the employer reasonably controverts the claimant's right to such compensation. Id.
At the end of February 1995, defendants had seen Dr. Segura's prescription for claimant to return to regular duties, Dr. Naccari's discharge of the claimant form treatment and prescription to return to regular duties, and Dr. Flood's evaluation that the claimant perform light duty. At trial, claimant offered no evidence that he informed the defendants, before termination of the benefits, that he was unable to perform the work which Boh Brothers offered.
We conclude that the termination of Dabney's benefits in February 1995 was not arbitrary, capricious or without probable cause. Thus, the award of $8,000.00 in attorney's fees was an abuse of the trial court's discretion. We also conclude that Dabney's entitlement to the benefits at issue was not unreasonably controverted by Boh Brothers, especially in light of the fact that the claimant, until trial, did not offer them a justification for his refusal to continue to work after the December injury. Therefore, the trial court abused its discretion when it assessed a $2,000.00 penalty for defendant's termination of claimant's supplemental earnings benefits. Thus, the $8,000.00 award for attorney's fees and the $2,000.00 penalty for defendant's termination of Dabney's benefits in February 1995 is hereby reversed.
FIFTH ASSIGNMENT OF ERROR: The trial court erred by deviating from the mandatory reduction in benefits when the claimant refuses to cooperate with necessary rehabilitation.
Defendant argues that the claimant's refusal to participate in the necessary rehabilitation requires a mandatory fifty percent reduction in his benefits for each week, regardless of the level of participation. The trial court concluded:
This court finds that claimant, Rickey Dabney, has not cooperated with vocational rehabilitation. Therefore, pursuant to R.S. 23:1226(E), claimant's weekly compensation benefits shall be reduced by 50%.
However, in order to encourage claimant to cooperate with rehabilitation, IT IS FURTHER ORDERED BY THIS COURT that, if claimant does attend school in order to obtain his G.E.D., then this 50% reduction shall be reduced in proportion to his attendance at school....
LSA-R.S. 23:1226(E) provides, in pertinent part, "refusal to accept rehabilitation as deemed necessary by the hearing officer shall result in a fifty percent reduction in weekly compensation, including supplemental earnings benefits pursuant to R.S. 23:1221(3), for each week of the period of refusal." [Emphasis added.] Clearly, the trial court determined that claimant had not "cooperated fully with the vocational rehabilitation efforts". The language of the applicable statute is mandatory, as shown by the use of the very clear and unambiguous language.
*1114 Therefore, the trial court erred in ordering the employer to deviate from the mandatory fifty percent reduction. Thus, that part of the May 1997 judgment, ordering the employer to reduce the fifty percent (50%) reduction "in proportion to his [claimant's] attendance at school", is reversed. However, the fifty percent (50%) reduction in the claimant's benefits for his failure to participate in the necessary rehabilitation is otherwise affirmed.
SIXTH ASSIGNMENT OF ERROR: The trial court erred in awarding the claimant the maximum benefits and not reducing his average monthly pre-injury wages by his post-injury earning capacity.
The trial court further found that defendant failed to prove the availability of suitable jobs. Once the employee's initial burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for benefits or establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was available to the employee in his or the employer's community or reasonable geographic region. LSA-R.S. 23:1221(3)(a). The amount of benefits is based on the difference between the claimant's pre-injury average monthly wage and claimant's proven post-injury monthly earning capacity. LSA-R.S. 23:1221(3)(a). In Banks, supra, the Louisiana supreme court concluded that "an employer may discharge its burden of proving job availability by establishing at a minimum, the following, by competent evidence: (1) the existence of a suitable job within claimant's physical capabilities, and within claimant's or the employer's community or reasonable geographic region; (2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and (3) an actual position available for that job at the time that claimant received notification of the job's existence." at 557.
Boh Brothers employed the claimant after his injury on 7 December 1994. The claimant worked from the day after the injury until early to mid January 1995. The claimant testified that he quit working after he was denied light duty work and informed he needed to perform his regular duties which he believed he could not physically manage and which he testified ignored Dr. Segura's restrictions. This period of time is not before this court on appeal because the court did not order benefits retroactive to this time and the employer did not thereafter make any attempt to offer the claimant any employment.
Defendants employed a vocational rehabilitation counselor, Nancy Springler, who evaluated the claimant's abilities and the availability of jobs suitable to his condition. Ms. Springler met with the claimant on several occasions. Ms. Springler also reviewed Mr. Dabney's medical records and interviewed the claimant's instructors and several potential employers. She concluded that the claimant "is capable of performing light to medium duty work." She prepared a labor market survey of numerous jobs on 21 November 1996. She also prepared a second list of suitable and available jobs which she provided to Mr. Dabney and reviewed with him on 16 December 1996. Ms. Springler testified that numerous jobs requiring only light duty performance were currently available to the claimant in Slidell, his home, or New Orleans. Ms. Springler also testified that the identified jobs were available in December when she notified the claimant of their availability. Dr. Gutnisky, Dr. Nutik, Dr. Segura and Dr. Naccari agree that claimant should be able to perform light duty work. Dr. Nutik opined that claimant should be able to return to his regular duties with the restriction that he not lift over 75 lbs. Dr. Gutnisky opined that Dabney should be able to return to some employment with a medium duty requirement. Dr. Segura and Dr. Naccari discharged the claimant and released him to return to his regular duties. Dr. Flood, claimant's treating physician, opined in December 1996, that the claimant could return to light duty work. Even though Dr. Flood in March 1997, classified the claimant as temporarily totally disabled in some reports, he offered no explanation, and his deposition reflects similar mistakes. The trial court found that the claimant could work, but it failed to determine the claimant's *1115 earning capacity. Therefore, this court finds that the trial court erred when it failed to consider the evidence presented by the employer of the currently available suitable jobs in the claimant's community. The claimant was advised of the availability of these suitable jobs at the latest date of 16 December 1996, and the claimant acknowledged at trial that he was aware of the available jobs at that time. The employer is not required to place the claimant in a suitable job, to be entitled a reduction in the claimant's maximum benefits. Banks, supra at 556-57. The employer must only prove the availability of such suitable jobs.
Boh Brothers proved the current availability of numerous jobs suitable to the claimant's physical capabilities, light duty. The positions were all classified as full-time, meaning at least forty hours per week, and the job with the lowest wage rate equaled $4.75 per hour. The lowest figure presented by the employer's evidence of the claimant's post-injury earning capacity is the appropriate sum with which to reduce his pre-injury wages. Dyer v. GAB Business Services, 92-1633 (La.App. 4 Cir. 2/11/93); 613 So.2d 801, 805. Because we believe the employer sustained its burden of proof of job availability, the trial court's judgment is reversed to the extent the claimant's supplemental earnings benefits were not reduced, beginning with his awareness of the available jobs (the date of the first session with the vocational rehabilitation counselor when suitable jobs were identified-16 December 1996), to the extent of the claimant's proven post-injury earning capacity, $817.00 ($4.75 × 40 hours = $190.00 × 4.3 weeks). Thus, claimant's supplemental earnings benefits will be reduced by the lowest average monthly wage of the available jobs beginning 16 December 1996.
The trial court clearly erred when it refused to consider the employer's evidence of job availability and failed to reduce the claimant's benefits accordingly. This court reduces the claimant's benefits by the claimant's proven post-injury earning capacity, in accordance with the factual findings of the trial court and with the evidence in the record of the availability of suitable jobs. Thus, the trial court's judgment is reversed to the extent that it awarded the claimant maximum supplemental earnings benefits and is amended to reduce this award by the claimant's post-injury earning capacity.

CONCLUSION
For the reasons given above, we reverse the judgment of the trial court in part, affirm in part and amend.
We REVERSE the award in the first judgment of 11 December 1996 of $2,000.00 in attorney's fees and the $1,000.00 penalty against the defendant for its refusal to consent to claimant's treatment by a second orthopedic surgeon, Dr. James Butler.
We AFFIRM the trial court's award calculating the claimant's average weekly wage using the formula from LSA-R.S. 23:1021(10)(a)(i), multiplying forty hours by his pre-injury wage of $9.57 (40 hours × $9.57 = $382.80), and determining that claimant's average weekly wage equals $382.80.
The trial court's finding that the claimant has proven his entitlement to supplemental earnings benefits is AFFIRMED, even though the claimant worked a few weeks at his pre-injury hourly wage after the accident.
The $8,000.00 award for attorney's fees and the $2,000.00 penalty for defendant's termination of Dabney's benefits in February 1995 is REVERSED.
Furthermore, we REVERSE the judgment awarding claimant the maximum supplemental earnings benefits and AMEND the award reducing the claimant's pre-injury wages by his proven post-injury earning capacity. Specifically, beginning 16 December 1996, the claimant's supplemental earnings benefits are calculated by reducing the claimant's pre-injury average monthly wages of $1646.04 ($9.57 × 40 hours = $382.80 × 4.3 weeks) reduced by his post-injury earning capacity of $$817.00 ($4.75 × 40 hours = $190.00 × 4.3 weeks). Accordingly, we AMEND the trial court's award of supplemental earnings benefits and REDUCE the award of maximum benefits by the claimant's proven post-injury earning capacity to $547.17 per month ($1646.04 -817.00 = $829.00 × 66 2/3).
*1116 We further REVERSE the trial court's judgment to the extent that it requires the employer to deviate from the mandatory fifty percent reduction in the claimant's benefits for the weeks in which he refuses to participate fully in any rehabilitation efforts. However, we AFFIRM the trial court's judgment reducing the claimant's weekly benefits by fifty percent (50%) from 25 November 1996.
REVERSED IN PART, AFFIRMED IN PART AND AMENDED.
NOTES
[1] Because the claimant failed to brief his request for additional attorney's fees for defending the appeals, this court is not compelled to consider this argument.