## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-1198


CARLA SOWELL

VERSUS

PROCESS EQUIPMENT


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2,
PARISH OF RAPIDES, NO. 05-00452,
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of John D. Saunders, Jimmie C. Peters, and Michael G. Sullivan, Judges.


**AFFIRMED AS AMENDED.**


M. Blake Monrose
Hurlburt, Privat & Monrose
Post Office Drawer 4407
Lafayette, Louisiana 70502-4407
(337) 237-0261
Counsel for Defendant/Appellant:
    Process Equipment

Edward A. Kaplan
Attorney at Law
Post Office Box 12386
Alexandria, Louisiana 71315
(318) 448-0831
Counsel for Plaintiff/Appellee:
    Carla Sowell

SULLIVAN, Judge.

Process Equipment appeals a workers' compensation judgment in favor of its former employee, Carla Sowell. For the following reasons, we affirm as amended.

**Discussion of the Record**

Mrs. Sowell filed a disputed claim for compensation alleging that she was injured on August 21, 2004, while setting up a monorail on a job for Process Equipment in Florence, South Carolina. At trial, she described being knocked to the floor on her right side when her co-employee, Wayne Johnson, "wiggled" a piece of equipment that she was holding after the monorail became jammed. Mrs. Sowell's husband, Wayne Sowell, who was working at the same job site but on another level, testified that he arrived on the scene just after Mrs. Sowell fell and while she was still on the floor. Mr. Sowell stated that he heard a "bam-slam" as he was walking upstairs and that, when he got to the top of the stairs, he saw Mr. Johnson kneeling beside her on the floor. Mr. Sowell then described how he and Mr. Johnson helped his wife up and sat her in front of a window, where she requested to stay for about ten minutes. Mr. Johnson, however, denied that he witnessed Mrs. Sowell having an accident on the job.

Mrs. Sowell testified that she reported the accident later that day to Jeff Bowden, the job foreman, who was away from the site at the time of the accident, and to Roger Land, the safety man on the night shift, but that no one mentioned anything to her about filling out an accident report. Mr. Land testified that Mrs. Sowell reported to him that she had hurt her back while working with Mr. Johnson, but that she did not want to go to the doctor because she thought it was only a muscle strain. Mr. Land then told her to report the accident to Mr. Bowden and to Mike Williamson, the company's safety director. According to Mr. Land, Mrs. Sowell later told him

that she did report the accident to Mr. Bowden. Mr. Land also testified that he assumed she had reported the accident to Mr. Williamson because at some point Mr. Williamson called him about it, and Mr. Land told Mr. Williamson that Mrs. Sowell told him that she hurt her back. However, both Mr. Bowden and Mr. Williamson testified that they did not learn about the accident until after Mrs. Sowell filed suit in January of 2005, and Mr. Williamson stated that Mr. Land never told him that Mrs. Sowell had reported the accident to him.

After the accident, Mrs. Sowell continued to work on several jobs in other states for Process Equipment, sometimes returning to her home in Jena, Louisiana, between jobs. She first sought medical treatment on November 16, 2004, from Dr. I. C. Turnley, Jr., reporting to him that she hurt her back two and a half months earlier while pulling on a beam and has had pain since then. Dr. Turnley ordered an MRI, which revealed marked spondylosis with discogenic and plate changes at L5-S1; neural foraminal narrowing and facet hypertrophy bilateral at L5-S1 and right-sided at L4-5, with clinical correlation for a right L4 and bilateral L5 radiculopathy recommended; and a left paracentral disc bulge at L5-S1 contacting the left S1 nerve root, with clinical correlation for left S1 radiculopathy recommended. Mrs. Sowell was also seen by at least two other physicians, one at LSU Hospital in Shreveport, Louisiana, and one at Huey P. Long Medical Center in Pineville, Louisiana, who recommended physical therapy. She finally did begin a physical therapy program in March of 2005, but that course was discontinued in April of 2005 after she reported no significant change in pain and that some exercises "made her back pain worse." She testified that she is no longer able to work, as she cannot sit or stand very long due to back and leg pain. She acknowledged that three years before the present

2

accident she reported to Dr. Turnley that she had low back pain for about a year, but she also stated that she had never had this type of back pain before.

At the close of the evidence, the workers' compensation judge (WCJ) found in favor of Mrs. Sowell, awarding her supplemental earnings benefits (SEB) at the maximum compensation rate and on a zero-earnings basis, $4,000.00 in penalties for the failure to pay indemnity benefits and medical expenses, and $5,000.00 in attorney fees.

## Work-Related Injury

In its first assignment of error, Process Equipment argues that the WCJ erred in finding that Mrs. Sowell was injured in the course and scope of her employment, given that her co-employee, Mr. Johnson, denied that an accident occurred and that Mrs. Sowell continued to work and did not seek medical treatment for nearly three months after the accident.

In oral reasons, the WCJ stated that he found corroboration of Mrs. Sowell's accident in the testimony of Mr. Land, who stated that she reported the accident to him and that he later told this to Mr. Williamson; in the testimony of her husband, who saw her on the floor with Mr. Johnson kneeling beside her; and in the medical records of Dr. Turnley, who recorded that Mrs. Sowell reported hurting her back about two and a half months previously while pulling on a beam. In making these credibility determinations, the WCJ specifically noted the conflict in the testimony of Mr. Land and Mr. Williamson, in that Mr. Land stated that he told Mr. Williamson that Mrs. Sowell reported the accident to him, whereas Mr. Williamson denied that Mr. Land ever told him that the accident had been reported to him. The WCJ also found that any inconsistent statements regarding Mrs. Sowell's prior back problems

3

were insignificant, considering that there was no evidence of any medical care for those problems and that Mrs. Sowell continued to work for Process Equipment during that time.

In *Dean v. Southmark Construction*, 03-1051, p. 7 (La. 7/6/04), 879 So.2d 112, 117 (citations omitted), the supreme court discussed the standard of review in workers' compensation cases as follows:

> In worker's compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC's findings of fact is the "manifest error-clearly wrong" standard. Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. The determination of whether injury occurred in the course and scope of employment is a mixed question of law and fact.

Further elaboration on the manifest error standard can be found in *Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989) (citations omitted) (emphasis added), wherein the supreme court explained:

> When findings are based on determinations regarding the credibility of witnesses, the manifest error–clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.*

4

Process Equipment argues that the testimony of Mr. Johnson, who stated that he did not witness an accident, discredits Mrs. Sowell's account of the incident. However, the WCJ, in detailed reasons, chose to accept the testimony of Mrs. Sowell's husband, who stated that he came upon the scene shortly thereafter and saw Mr. Johnson kneeling beside his wife, and of Mr. Land, who stated that an accident occurring while Ms. Sowell was working with Mr. Johnson was reported to him. We can find no manifest error in the WCJ's credibility determinations, given that Mrs. Sowell's account of the accident is corroborated by a current employee of Process Equipment and by the medical records of Dr. Turnley.

**Disability**

In its second assignment of error, Process Equipment argues that the WCJ committed legal or manifest error in finding that Mrs. Sowell was entitled to SEB, when no treating physician restricted her from working and she continued to work for three months after the accident.

When making a claim for SEB, the employee bears the initial burden of proving that he is unable to earn wages equal to 90% of his pre-accident wages. La.R.S. 23:1221(3)(a). If the employee meets this threshold showing, then the burden shifts to the employer to show that the employee is physically capable of work and that work was offered or available in the employer's or the employee's reasonable geographic region. La.R.S. 23:1221(3)(c)(i).

The WCJ based its decision to award SEB on the medical evidence in the record, in particular the MRI finding of a left paracentral disc bulge at L5-S1 that contacts the left S1 nerve root, the findings of paraspinal muscle spasms, and the recommendation for physical therapy (which course of treatment was unsuccessful,

5

as it did not produce a significant change in pain). In addition to the medical evidence, Mrs. Sowell testified that she is not able to work because she cannot sit or stand very long without her back and legs giving her a lot of trouble.

In *Thomas v. Casino Magic*, 39,725, p. 5 (La.App. 2 Cir. 5/11/05), 902 So.2d 1283, 1287, *writ denied*, 05-1970 (La. 2/3/06), 922 So.2d 1183, the court reiterated the following principle regarding proof of disability in a workers' compensation case:

> The finding of disability within the framework of the workers' compensation law is a legal rather than a purely medical determination. Therefore, the question of disability must be determined by reference to the totality of the evidence, including both lay and medical testimony. Ultimately the question of disability is a question of fact, which cannot be reversed in the absence of manifest error.

In the present case, the WCJ found that Mrs. Sowell was entitled to SEB based upon objective evidence of an injury, identified by the WCJ as "a disc abutting a nerve," that has yet to be resolved. The fact that her physicians did not discuss work restrictions is not surprising, given that Mrs. Sowell was no longer working when she saw them. Additionally, we note that most of Mrs. Sowell's medical care was not rendered within the workers' compensation system, in that she mostly visited the state's charity hospitals and her employer did not send her to a physician of its choosing. We decline to disturb the WCJ's finding of disability on the record before us.

**Average Weekly Wage**

In its third assignment of error, Process Equipment argues that the WCJ erred in calculating Mrs. Sowell's average weekly wage to be $733.00, thereby entitling her to the maximum compensation rate of $490.00. Process Equipment argues that her average weekly wage should either be $550.00, which amount is based upon a

calculation submitted by Mrs. Sowell, or should be $610.00, which is based upon a presumption of forty hours per week at a rate of $16.00 per hour.

Louisiana Revised Statutes 23:1021(12) (emphasis added) provides in part:

"Wages" means average weekly wage at the time of the accident. The average weekly wage shall be determined as:

(a) Hourly wages.

(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident *or forty hours, whichever is greater*; or

(ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but *regularly, and at his own discretion, works less than forty hours per week for whatever reason*, then, the average of his total earnings per week for the four full weeks preceding the date of the accident; or

(iii) If the employee is paid on an hourly basis and the employee is *a part-time employee*, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury.

A "[p]art-time employee" is defined in La.R.S. 23:1021(11) as "an employee who as a condition of his hiring knowingly accepts employment that (a) customarily provides for less than forty hours per work week, *and* (b) that is classified by the employer as a part-time position." (Emphasis added.)

Mrs. Sowell worked for Process Equipment on a per-job basis, with those jobs varying in length and occurring in different states. The only wage records for review are those for the five weeks before the accident. Those records show that Mrs. Sowell worked for three of those weeks, and during the weeks that she did work, she had forty-five hours, twenty-two hours, and fifty-three hours, respectively. Additionally, we note that in each week that she worked, she was paid for some hours at a higher, overtime rate before she accumulated forty hours that week. (For example, for the

7

week of August 15, 2004, she was paid for thirty-two hours at a regular rate of $16.00 and for thirteen hours at an overtime rate of $24.00.)

In the present case, there is no evidence that Mrs. Sowell was classified by Process Equipment as a "part-time employee" or that she "regularly, and at [her] own discretion," worked less than forty hours a week. Accordingly, it would seem that she is entitled to the presumption of forty hours in La.R.S. 23:1021(12)(a)(i).[1] Nonetheless, we disagree with Process Equipment that Mrs. Sowell's average weekly wage should be calculated simply by multiplying forty hours by a base rate of $16.00, when she was paid at the higher rate of $24.00 for some of those forty hours. In *Soileau v. R & H Refractory Services, Inc.*, 01-355, p. 3 (La.App. 3 Cir. 10/30/01), 796 So.2d 903, *writ denied*, 01-2954 (La. 1/25/02), 807 So.2d 841, this court considered the case of an "as-needed" employee who worked only one full week, with overtime pay, in the four weeks before the date of his accident. In affirming the WCJ's calculation that resulted in the maximum compensation rate, we stated:

> Our review of the jurisprudence leads us to conclude that the most equitable calculation to be utilized in the unique circumstances presented herein is to average the wages from the full weeks worked out of the last four. *See Henry v. Bolivar Energy Corp.*, 95-1691 (La.App. 3 Cir. 6/5/96), 676 So.2d 681, *writ denied*, 96-1749 (La. 10/11/96), 680 So.2d 644. Soileau worked only one full week out of the four preceding his injury. Therefore, we will use his wages from that week, *including overtime wages*, and we hold that his average weekly wage is $670.00. Accordingly, we affirm the finding that Soileau is entitled to the maximum compensation rate of $367.00 per week.

*Id*. at 905-06 (emphasis added). The calculation made by the WCJ in this case is similar to that in *Soileau*, in that the WCJ averaged Mrs. Sowell's earnings for the

---

[1]In *Dabney v. Boh Brothers Construction Co.*, 97-1041 (La.App. 4 Cir. 3/11/98), 710 So.2d 1106, the court stated that it was not persuaded that a guarantee of forty hours every work week was a requirement for the application of that statute. In *Dabney*, 710 So.2d at 1111, the court found that a construction worker whose hours depended on the weather and job availability, but who "more often than not" worked a forty-hour week, was entitled to the presumption of forty hours under La.R.S. 23:1021(12)(a)(i).

8

three weeks that she actually worked before this accident. Under the facts herein, we find no error in the WCJ's calculation of Mrs. Sowell's average weekly wage.

**Penalties and Attorney Fees**

In its fourth assignment of error, Process Equipment argues that the WCJ erred in finding it liable for penalties and attorney fees, considering that it investigated the accident upon the filing of the disputed claim, that Mrs. Sowell did not report the accident to her supervisor or the safety director, and that she never submitted any medical records, bills, or mileage requests for reimbursement.

In assessing the employer with penalties and attorney fees, the WCJ relied on the testimony of Mr. Land, who stated that Mrs. Sowell reported that she hurt her back but did not want to see a doctor at that time and that Mrs. Sowell had later called and stated that she had to have an MRI. Accordingly, the WCJ reasoned that by November of 2004, around the time of the MRI, the employer should have had an accident report filed and should have begun an investigation, which would have included at least requesting the medical records of the MRI of which it was aware. As to the propriety of reporting the accident to Mr. Land, as opposed to Mr. Bowden or Mr. Williamson, we note that Mr. Land held a safety position with the company and that Mr. Bowden and Mr. Williamson both testified that it was Mr. Land who informed them of suit being filed in January.

> The determination of whether an employer should be cast with penalties and attorney fees is essentially a question of fact, and the trial court's finding must not be disturbed on appeal absent manifest error. "To avoid penalties and attorneys fees for the nonpayment of benefits, the employer or insurer is under a continuing duty to investigate, to assemble, and to assess factual information before denying benefits."

*Rose v. Maison Deville Care Center*, 05-1307, p. 5 (La.App. 3 Cir. 4/5/06), 927 So.2d 625, 628-29, *writ denied*, 06-1054 (La. 9/1/06), 936 So.2d 205 (citation omitted)

(quoting *George v. Guillory*, 00-591, p. 13 (La.App. 3 Cir. 11/2/00), 776 So.2d 1200, 1209).

We find no error in the WCJ's decision to award penalties and attorney fees in this case. The WCJ obviously accepted the testimony of Mr. Land that Mrs. Sowell timely reported the accident and that she requested that the employer provide at least one medical procedure, an MRI, in connection with that accident. Although the request for the MRI came in November of 2004, the company's two other safety officials both testified that they were not aware of an accident until January of 2005, after suit was filed. On this record, we find no error in the WCJ's credibility determination that an accident warranting further investigation was timely reported.

Process Equipment also argues that the WCJ erred in awarding an excessive amount of attorney fees in this case. However, when we consider that claimant's counsel participated in two depositions in addition to trying the case on the merits, we decline to disturb that award. Mrs. Sowell has answered the appeal, seeking additional attorney fees for appellate work, which we fix at $1,000.00.

### Forfeiture of Benefits

In its final assignment of error, Process Equipment argues that the WCJ erred in rejecting its claim that Mrs. Sowell forfeited all workers' compensation benefits based upon her denial of a previous back injury that was referenced in her medical records.

In her deposition taken on July 14, 2005, Mrs. Sowell denied that she had ever injured her back, neck, or spine before August of 2004. However, in October of 2001, she reported to Dr. Turnley that she had low back pain for about a year after lifting material at work, but that she had received no medical treatment for this

10

condition, had no X-rays taken, and was given pain relievers without an evaluation. When confronted with Dr. Turnley's medical records at trial, Mrs. Sowell testified that she has had backaches in the past, but "I hadn't had a back problem like this." She explained that when "[y]ou get out there pulling on everything. . . . yeah, you gonna hurt," but that if she had previously injured her back on the job, she could not remember it.

The WCJ did not specifically address Process Equipment's forfeiture claim in his reasons, but he did comment on Mrs. Sowell's testimony, stating that he found any inconsistencies about prior back problems to be "insignificant" and "insufficient to say that I should not weigh her testimony favorably." The WCJ also noted that Mrs. Sowell admitted to having back problems on and off due to the nature of her work for this company and that the medical records reflect that she had no X-rays or medical treatment other than pain medication for any prior back problems.

In *Scallon v. Boise Cascade Corp.*, 05-327, p. 5 (La.App. 3 Cir. 11/2/05), 915 So.2d 1004, 1007-08, this court stated the following regarding a claim for forfeiture of workers' compensation benefits:

> The Louisiana Supreme Court has interpreted La.R.S. 23:1208 as providing for the forfeiture of workers' compensation benefits when a claimant (1) makes a false statement or representation; (2) that statement or representation is willfully made; and (3) the false statement or representation is made for the purpose of obtaining or defeating any benefit or payment. *Resweber v. Haroil Constr. Co.*, 94-2708 (La.9/5/95), 660 So.2d 7. A forfeiture pursuant to La.R.S. 23:1208 is not necessary where the false statement is inconsequential or was made inadvertently. *Jeanise v. Cannon*, 04-1049 (La.App. 3 Cir. 2/23/05), 895 So.2d 651. "Forfeiture of benefits under La.R.S. 23:1208 is a harsh remedy which must be strictly construed." *Regan v. Eunice Superette, Inc.*, 04-227, p. 5 (La.App. 3 Cir. 9/29/04), 884 So.2d 1209, 1213. A workers' compensation judge's determination whether an employee has forfeited his or her right to workers' compensation benefits is a finding of fact that will not be reversed on appeal in the absence of manifest

11

error. *Smith v. Quarles Drilling Co.*, 99-171 (La.App. 3 Cir. 6/2/99), 741 So.2d 829, *writ denied*, 99-1949 (La.10/8/99), 751 So.2d 227.

From the WCJ's comments concerning Mrs. Sowell's credibility, we can conclude that the WCJ did not find any inconsistencies between her testimony and her medical records to rise to the level of fraud. Mrs. Sowell explained that she had backaches in the past due to the nature of her work, but that she did not have pain like she does now. There is no evidence of any prior treatment, other than what she reported to Dr. Turnley, or of any prior work-related claim being filed. We find no error in the denial of the forfeiture claim.

## Decree

For the above reasons, the judgment of the Office of Workers' Compensation is amended to award additional attorney fees in the amount of $1,000.00 for work performed on appeal. In all other respects, the judgment is affirmed. Costs of this appeal are assessed to Defendant-Appellant, Process Equipment.

**AFFIRMED AS AMENDED.**